**The STATE of Texas, The State Department of Highways and Public Transportation, et al., Appellants,**

v.

**Mrs. A. J. McBRIDE, Appellee.**

**No. 6178.**

Court of Civil Appeals of Texas, Waco.

June 20, 1980.

Rehearing Denied July 10, 1980.

Harold G. Kennedy, Asst. Atty. Gen., Austin, for appellants.

Roger Knight, Jr., Madisonville, for appellee.

## OPINION

JAMES, Justice.

This is a suit brought under the provisions of Article 6252–19, Vernon's Texas Civil Statutes, commonly known as the Texas Tort Claims Act. Plaintiff-Appellee Mrs. A. J. McBride brought this suit against Defendant-Appellants The State of Texas, The State Department of Highways and Public Transportation, and The State Highway and Public Transportation Commission for her personal injuries and damages growing out of an automobile accident which occurred on November 1, 1977, while she was travelling over a portion of a Farm to Market Road which was undergoing construction. Plaintiff alleged that "the roadway of FM 2346 in the area where the accident occurred which was being reworked by the State was wet, sloppy, and slick, and the State—owed a duty to your Plaintiff as well as the travelling public to warn of the condition of FM Highway 2346 at the point where the accident occurred." Plaintiff further alleged: "The State of Texas—has a duty and owes a duty to the citizens of the State of Texas and to the people using said highways and roadways and to maintain them in reasonably safe condition—and to properly warn, mark, and apprise the traveling public of said conditions. In this connection your Plaintiff would show that the Defendants have created—a special defect upon FM 2346—and by virtue of such special defect owe a duty to the Plaintiff of a higher order than that owed to a licensee, and the Defendants breached its duty by creating the special defect,—and failing to adequately warn of the existence of the special defect, all of which was negligence and were each and all a proximate cause of the accident made the basis of this suit."

Trial was had to a jury which found:

(1) The slick and muddy condition of the unpaved reworked section of FM 2346 constituted a dangerous condition;

(2) The State Department of Highways and Public Transportation knew or should have known of such dangerous condition prior to the occurrence in question;

(3) The State Department failed to warn of the existence of such dangerous condition prior to the accident;

(4) Such failure was negligence;

(5) And a proximate cause of the accident in question;

(6) The State Department had actual knowledge of the defect or condition prior to the accident in question.

(7) The jury failed to find that Mrs. McBride failed to keep a proper lookout.

(9) The jury failed to find that Mrs. McBride failed to heed and observe the "slow" warning sign.

(11) The jury failed to find that Mrs. McBride failed to comply with the posted advisory speed sign located immediately preceding the location of the accident in question.

(13) The jury failed to find that Mrs. McBride drove her car at a speed at which she could not maintain control thereof, knowing of the condition of the roadway at the location of the accident in question.

(15) The jury failed to find that Mrs. McBride drove her car at an excessive rate of speed on the occasion in question.

(17) The jury failed to find that Mrs. McBride failed to make timely application of brakes and steering upon her leaving the traveled portion of the highway.

(19) The comparative negligence issue was not answered, and no answer was necessary, since the Defendant was found to be negligent, whereas the Plaintiff was exonerated of any contributory negligence.

Special Issues Numbers 20, 21, and 22 inquired of Mrs. McBride's damages, and the jury's answers to same totalled $40,-000.00.

Pursuant to and in harmony with the jury verdict, the trial court entered judgment in favor of Plaintiff Mrs. McBride against the Defendants in the amount of $40,000.00 and costs, from which the State appeals. We affirm.

Appellants (to whom we will hereinafter refer in the singular as "the State") come to this court on eight points of error asserting: (1) Special Issue No. 2 (wherein the jury found that the State knew or should have known of the dangerous condition prior to the accident) was not an ultimate issue for the stated reason that prior actual knowledge of the dangerous condition and not constructive knowledge is required to be shown; (2) the jury's answer to Special Issue No. 6 (wherein the jury found that the State had actual knowledge of the defect or condition prior to the accident) will not support a judgment in that (Appellant says) there are no findings of failure to warn, negligence, or proximate cause in relation thereto; (3, 4, and 5) there is no evidence and insufficient evidence to support the jury's answer to Special Issue No. 3 (wherein the jury found that the State failed to warn of the existence of the dangerous condition prior to the accident in question); (6 and 7) the jury verdict will not support a judgment in that there is no finding that Plaintiff did not know of the dangerous condition; and the uncontroverted evidence shows that Plaintiff had the same or better knowledge of the dangerous condition as did the State; and (8) there is no evidence to support the jury's answer to Special Issue No. 5, wherein the jury found that the State's negligence in failure to warn was a proximate cause of the accident in question. We overrule all of the State's points of error and affirm the trial court's judgment.

In the autumn of 1977, State Farm to Market Road No. 2346 in Madison County was under repair by the State Department of Highways and Public Transportation, to the extent that two sections were in the process of being reworked. Such reworking process when and as completed consists of ripping off or scarifying the top hard surface together with six or seven inches of base material thereunder; the top surface is pulverized in place, remixed with the base material and replaced on the road to form new base material. It is then graded, rolled, and compacted. The next step in the rework operation is to "prime" or coat with an oil mixture which is intended to seal out moisture prior to final surfacing with crushed rock and asphalt.

On the afternoon of October 31, 1977, the area in question, consisted of, from south to north, a section of 1402 feet in length which had been so reworked and "primed" by the application of the oil mixture. To the north of the primed section lay a section of undisturbed pavement which was 1404 feet in length; and to the north of this pavement was another section 346 feet long (in which section the accident in question occurred) which had been reworked to the extent that the old pavement had been scarified and pulverized, the base material plowed and mixed with the old pavement, the mixed material had been redeposited and replaced in the form of a new base material. This portion had not been primed by the application of the oil mixture.

By best accounts from all testimony, as of time of the accident in question, the State had posted at each end of the construction area a barricade painted with black and white stripes, together with two orange and black signs, one of which read, "SLOW", and the other of which read, "35 MPH". There were also reflectorized cones 18 inches in height at least at each end of the construction area, and perhaps at the beginning and end of each of the two reworked sections.

It began raining and continued to rain during the day of November 1, 1977, and no further reworking was done in the area that day. Between 7:30 and 8 AM on the morning of November 1, 1977, Plaintiff Mrs. McBride drove southbound over both reworked sections on her way to work. She experienced no difficulty on this trip. Shortly before dark that day, after getting off from work and after having a doctor's appointment, Mrs. McBride drove back home northward over the same route she had gone over that morning. It was raining on this trip. She testified that she saw the two signs which read "SLOW" and "35 MPH" and said she slowed to that speed and had no trouble with the first reworked section. Then she slowed even more as she

approached the second reworked section (the unprimed section). As Mrs. McBride was driving on northward and approached the second reworked area, she said she slowed down, because it "looked worse than the first one." She had her ten-year-old daughter in the car with her. The accident occurred at or near the north end of the second or northernmost reworked section. Mrs. McBride testified: "Well, when I hit the muddy part, I told my little girl to hold on because we had started skidding. And then I—I really don't know if I hit my head or what happened, I do not remember going out of it," (meaning, out of the muddy area). She said her car was "just sliding back and forth and I was trying to control the car and it was out of control." She went into a skid, and apparently the rear wheels slid to the left and her car went off the road into the ditch on her lefthand or west side of the road, and turned over, causing the personal injuries and damages in question. When the car came to rest, its front end was headed easterly or toward the road. There was evidence that the left rear quarter of Plaintiff's car struck a culvert wall before the car came to rest. After this accident, the Highway Department closed the road and posted signs to this effect.

Several witnesses traveled this portion of the road where Plaintiff's accident occurred on the day of the accident. These witnesses in effect testified that this portion of the road was very slick, that their vehicles would slide, even at very low speeds, such as about 15 miles per hour. Each of these witnesses testified that they were going under the 35 miles per hour as posted by the State, and each had considerable difficulty traversing this portion of the road when Plaintiff's accident occurred. The attempt to warn on behalf of the State did not tell what condition existed beyond the barricades and the signs which read, "SLOW" and "35 MPH." The State had many types of warning signs available, including one which read, "Slick When Wet"; however, no signs except the "SLOW" and "35 MPH" signs were in place at the time of Plaintiff's accident.

We revert to Appellant's first point, in which it is asserted that special Issue No. 2 (wherein the jury found that the State knew or should have known of the dangerous condition prior to the accident) was not a controlling or ultimate issue, because, Appellant says, prior actual knowledge of the dangerous condition and not constructive knowledge is required to be shown. We have difficulty following the reasoning of Appellant in this regard, since the jury found in answer to Special Issue No. 6 that the Appellant had actual knowledge of this defect or condition prior to the accident in question. Since the Appellant State Department created the dangerous condition, there can be no doubt that Appellant had actual knowledge of the dangerous condition. See *County of Harris v. Eaton* (Tex. 1978) 573 S.W.2d 177 at page 180. Appellant's first point is overruled.

Appellant's second point of error argues that the jury's answer to Special Issue No. 6 (wherein the jury found that the State had actual knowledge of the defect or condition prior to the accident) will not support a judgment because, Appellant says, there are no findings of failure to warn, negligence, or proximate cause in relation thereto. Here again we have difficulty following this reasoning. It seems to us that this argument is answered by examining the jury's answers to Special Issues Numbers 1 through 5, inclusive. In answers to these issues, the jury found: (1) That the slick and muddy condition of the unpaved reworked section of the road constituted a dangerous condition; (2) that the State knew or should have known of the dangerous condition prior to the accident; (3) the State failed to warn of the existence of the dangerous condition prior to the accident; (4) that such failure was negligence; (5) which negligence was a proximate cause of the accident in question. Appellant's second point is overruled.

Appellant's points of error 3, 4, and 5 challenge the legal and factual sufficiency of the jury's answer to Special Issue No. 3, wherein the jury found that the State

failed to warn of the existence of the dangerous condition prior to the accident. Appellant contends that since the State employees followed the manual promulgated by the State Highway Department, that the State as a matter of law gave sufficient warning to Plaintiff-Appellee of the dangerous condition. We do not agree.

The warning afforded Plaintiff-Appellee Mrs. McBride consisted of, in addition to the cones and barricade, a "SLOW" sign and a "35 MPH" sign, which signs Mrs. McBride testified she saw as she entered the reworked area. However, the State furnished no warning whatever of the dangerous condition to which she was subjected, to wit, the slick and muddy condition where the accident occurred. She testified that she knew nothing about road construction, except that she could see that the road was under construction. But since she had travelled over this stretch of road without difficulty on the early morning of the same day of the accident, she had no way of knowing of the existence of the slick, muddy condition that evening without a warning by the State Highway Department. The Appellant's signs said, "SLOW" and "35 MPH"; however, she was travelling less than 35 miles per hour over the unprimed reworked section when she encountered the slick, muddy condition which brought about the loss of car control and the accident. Appellant's argument, as we understand it, is that since the State warned that the road was under construction, that this is all the warning the State was required to furnish. It is true the State did warn of the construction; however, this is a long way from warning of the slick, muddy condition of the road, which condition was within the peculiar knowledge of Appellant, and of which condition the evidence shows that Plaintiff-Appellee had no knowledge until it was too late. Likewise, the testimony of other drivers who travelled through this area during the day of the accident after the rains came, showed that this was a dangerous condition for which no warning was given by Appellant. Contrary to Appellant's argument, the State Department cannot set its own standard of care. The evidence shows that Appellant had warning signs such as "Slick When Wet" as well as others, none of which Appellant chose to use. In our opinion the jury's answer to Special Issue No. 3 is amply supported by the evidence. Appellant's points 3, 4, and 5 are accordingly overruled.

■ By Appellant's points 6 and 7 it is contended that the jury verdict will not support a judgment in that there is no finding that Plaintiff-Appellee did not know of the dangerous condition. The question of Plaintiff-Appellee's knowledge of the dangerous condition relates to an issue of contributory negligence. See *Farley v. M M Cattle Co.* (Tex. 1975) 529 S.W.2d 751 at page 758; · *Sutton v. State Highway Dept.* (Tex.Civ.App. Waco 1977) 549 S.W.2d 59, NRE. The record before us contains no showing that Appellant ever requested such a special issue; therefore this contention has been waived by Appellant. Rule 279, Texas Rules of Civil Procedure.

■ Appellant's eighth and final point asserts there is no evidence to support the jury's answer to Special Issue No. 5, wherein the jury found that the State's negligence in failing to warn was a proximate cause of the accident. We overrule this point. The question of proximate cause is for the jury to determine from all the attending facts and circumstances. *Air Shields v. Spears* (Tex.Civ.App. Waco 1979) 590 S.W.2d 574, no writ. Proximate cause may be determined from circumstantial evidence. *Farley v. M M Cattle Co.* (Tex. 1975) 529 S.W.2d 751.

Section 3 of Article 6252–19 makes the State liable for death or personal injury caused from "some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state." The Act contains exceptions to this general waiver of liability one of which is found in Section 18(b) which in its pertinent parts provides:

"As to premise defects, the unit of government shall owe to any claimant only the duty owed by private persons to a licensee on private property, unless payment has been made by the claimant for the use of the premises. Provided, however, that the limitation of duty contained in this subsection shall not apply to the duty to warn of *special defects* such as *excavations* or obstructions on highways, roads or streets—." (emphasis supplied).

■ Under Section 18(b), cases wherein liability is predicated upon premise defects are in effect divided into (1) special defect cases and (2) regular defect cases. In a case involving a regular premise defect, the defendant is held to a lesser duty of care, that is, the duty of a licensor as opposed to an ordinary negligence duty. However, in a regular premise defect case, when the licensor has knowledge of a dangerous condition and the licensee does not, a duty is owed on the part of the licensor to either warn the licensee or to make the condition reasonably safe. *State v. Tennyson* (Tex. 1974) 509 S.W.2d 560; *Lower Neches Valley Authority v. Murphy* (Tex. 1976) 536 S.W.2d 561; *Gonzales v. Broussard* (Tex.Civ.App. San Antonio 1954) 274 S.W.2d 737, NRE; also see *Miranda v. State* (Tex.Civ.App. El Paso 1979) 591 S.W.2d 568, no writ. In the case of a special defect, the rule is different, and the State must warn of a special defect even if it only has constructive knowledge of it. *County of Harris v. Eaton* (Tex. 1978) 573 S.W.2d 177.

■ In the case at bar, the State created the dangerous condition, and therefore had actual knowledge of it; and there is an implied finding in support of the trial court's judgment that Mrs. McBride had no knowledge of the dangerous condition. The jury failed to find her guilty of any contributory negligence. Each of the special issues submitted to the jury inquiring of her contributory negligence involved her knowledge of the dangerous condition in question. At any rate, the State never requested any special issue directly inquiring if she knew of the dangerous condition, and therefore waived any assertion that she did have knowledge of the dangerous condition.

■ In this state of the record, we are of the opinion that whether the slick, muddy condition of the road was a "special defect" or a "regular defect", since the State had knowledge of it and Plaintiff-Appellee did not, the State had a duty to warn her, and having failed to do so, became liable. However, we are of the opinion that the dangerous condition in question was a "special defect", since it was an "excavation" within the meaning of Section 18(b). In such event, the State had a duty to warn of the defect if it had constructive knowledge of it. The jury verdict covers either eventuality, that is, whether the State had actual or constructive knowledge of the defect.

All of Appellant's points and contentions are overruled Judgment of the trial court is affirmed.

AFFIRMED.