**TEXAS DEPARTMENT OF TRANSPORTATION,**
Appellant,

v.

**Kevin O'MALLEY, next friend of Steven Losolla, Elizabeth Losolla, Nicole Losolla, and Lorenzo Losolla, minor children, and Emma Jean Losolla, Appellees.**

No. 13–97–754–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 10, 2000.

Richard Mason, Asst. Atty. Gen., Highway Division, Austin, for appellant.

Ronnie L. Agnew, Lubbock, for appellee.

Before Chief Justice SEERDEN and Justices HINOJOSA and YAÑEZ.

## OPINION

Opinion by Justice HINOJOSA.

Appellant, Texas Department of Transportation ("TxDOT"), appeals from the trial court's finding of a special defect under the Texas Tort Claims Act, a jury verdict in favor of appellees, Kevin O'Malley, Next Friend of Steven Losolla, Elizabeth Losolla, Nicole Losolla, and Lorenzo Losolla, Minor Children, and Emma Jean Losolla, and the trial court's denial of its motion for judgment notwithstanding the verdict. By three points of error, TxDOT contends the trial court erred by ruling as a matter of law that the loose gravel condition on the roadway was a "special defect" and by overruling its motion for judgment notwithstanding the verdict. We affirm.

### 1. *Background*

On May 22, 1994, Emma Jean Losolla was driving with her sister-in-law, Ermalinda Losolla, and Ermalinda's children, Steven and Elizabeth,[1] on Farm to Market Road ("FM") 766 in DeWitt County, Texas when she lost control on a curve and collided with an oncoming pickup truck. Emma, Steven, and Elizabeth were injured, and Ermalinda was killed in the accident. Emma sued to recover damages for her personal injuries, and Sylvia O'Malley[2] sued as Next Friend of Ermalinda's minor children, Steven, Elizabeth, Nicole, and Lorenzo.

Appellees alleged that TxDOT created a "special defect" on FM 766 by allowing an accumulation of loose gravel to remain on the road following maintenance work on May 20, 1994, and that TxDOT failed to warn of the roadway condition or make it reasonably safe. Appellees did not plead a "premises defect."

1. Ermalinda's two other children, Nicole and Lorenzo, were not in the car.

2. Sylvia O'Malley died prior to trial and her husband, Kevin O'Malley, was substituted as next friend of the children of Ermalinda Losolla.

The record reflects that on Friday, May 20, 1994, TxDOT performed a "spot seal coat" on the northbound lane of FM 766. TxDOT's road crew sprayed hot asphalt on the northbound lane of the highway, spread aggregate[3] on the area, and rolled the aggregate into the asphalt with a flat wheel roller. The specifications and requirements for a "spot seal coat" are set out in "Item 316" of the "Standard Specifications for Construction of Highways, Streets and Bridges," adopted by TxDOT on March 1, 1993. Item 316.4 requires:

> The finished surface shall be cleared of any surplus aggregate ... by sweeping or other approved methods after all rolling is completed.

Keith Gohlke, the supervisor of TxDOT's road crew that did the repair work on FM 766, testified that after the job was completed:

> We did not have no surplus of rock. There was no excess of rock after we got through with that job.

Gohlke admitted the crew did not have a broom with them on May 20, 1994, but said it was their standard practice to sweep the site on the day after the aggregate was spread and rolled. However, if the work was done on a Friday, the crew would not check the area until Monday.

On Sunday, May 22, 1994, the Losollas traveled northbound on FM 766 to the Stevenson Prison Unit just outside of Cuero. After they arrived at the prison, they were advised that visitors could not wear shorts; they had to wear something below their knees. One of the prison guards advised them that they could get slacks at the Wal–Mart store in Cuero. The Losollas got back in their car and returned on the same road (FM 766), now traveling southbound, to Cuero. A reverse curve sign, designating a speed limit of 40 mph,

3. In its brief, TxDOT defines aggregate as "gravel." At oral argument, TxDOT's counsel defined aggregate as "crushed rock."

was located one-fourth of a mile from the curve where the accident occurred. There was no sign indicating loose gravel on the road. Emma Jean Losolla admitted that as she approached the curve, she was talking to Ermalinda and they were trying to figure out where the Wal–Mart store was located. While traveling on the curve, Emma lost control of the car, crossed into the oncoming traffic lane, and collided with a pick-up truck.

Department of Public Safety Trooper Alex Bartee investigated the accident. Bartee testified there was more loose gravel in the southbound lane of FM 766 than in the northbound lane. He opined there was more loose gravel in the southbound lane because as cars traveled over the "spot seal coat" in the northbound lane, centrifugal force pushed the gravel into the southbound lane. Bartee performed a coefficient of friction test on the roadway to determine traction. The test was performed on the roadway before it was cleaned, and Bartee determined the coefficient of friction to be 0.665. According to Bartee, the average coefficient of friction on farm roads of this type is between 0.6 and 0.7.

TxDOT was informed of the accident and asked to clean up the loose gravel. TxDOT personnel arrived at the scene of the accident between 1:00 and 1:30 p.m. on Sunday, May 22, 1994, and picked up one-half cubic yard of aggregate from the roadway. Elroy Molina, TxDOT's Maintenance Supervisor, testified that the loose gravel was distributed over the entire length of the curve, approximately 200 feet, and covered both lanes of the roadway. Molina said the loose gravel he observed at the scene would have covered a small dump truck to a depth of three to four inches.

## 2. *Procedural History*

TxDOT moved for a directed verdict on the ground that appellees had not proven premises defect liability, but the motion was overruled. TxDOT subsequently moved for a directed verdict on the ground that the defect was not a "special defect." That motion was also overruled. The case was then submitted to the jury on a "special defect" charge, to which TxDOT objected.

The jury found that Emma Jean Losolla and TxDOT proximately caused the collision, and that each was fifty percent negligent. The jury also found that:

(1) Emma Jean Losolla sustained damages in the amount of $7,500;

(2) Steven Losolla sustained damages in the amount of $150,500;

(3) Elizabeth Losolla sustained damages in the amount of $126,500;

(4) Nicole Losolla sustained damages in the amount of $95,000; and

(5) Lorenzo Losolla sustained damages in the amount of $113,000.

TxDOT filed a motion for judgment notwithstanding the verdict contending the defect was a "premises defect" and not a "special defect" as was submitted to the jury. TxDOT alleged there was no evidence that: (1) the condition posed an unreasonable risk of harm; (2) TxDOT had actual knowledge of the danger; (3) Emma Jean Losolla did not have actual knowledge of the danger; and (4) TxDOT knew or should have known of the dangerous condition. The trial court overruled the motion. TxDOT then filed this appeal.

## 3. *Standard of Review*

Whether a condition is a "premises defect" or a "special defect" is a question of law. *State v. Burris,* 877 S.W.2d 298, 299 (Tex.1994) (per curiam); *State Dept. of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 238 (Tex.1992). We review a trial court's conclusions of law *de novo. Benedictine Sisters of the Good Shepherd v. Ellison,* 956 S.W.2d 629, 631 (Tex.App.—San Antonio 1997, writ denied); *Piazza v. City of Granger,* 909 S.W.2d 529, 532 (Tex.App.—Austin 1995, no writ). A conclusion of law will be re-

versed if it is erroneous as a matter of law. *Ellison,* 956 S.W.2d at 631.

### 4. *Special Defect*

In its first point of error, TxDOT complains the trial court erred in ruling as a matter of law that the loose gravel condition on the roadway was a "special defect." TxDOT contends that while the character of the roadway may have changed, there is nothing that shows the condition was a "special defect."

■ The Texas Tort Claims Act provides the state is liable for "personal injury and death so caused by a condition or use of ... real property if the governmental unit would, were it a private person, be liable to the claimant...." Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2) (Vernon 1997). The general standard of care the state owes as an owner or occupier of realty is that owed to a licensee. Tex. Civ. Prac. & Rem.Code Ann. § 101.022(a) (Vernon 1997). However, subparagraph (b) of § 101.022 provides that this limitation of duty does not apply "to the duty to warn of special defects such as excavations or obstructions on highways...." Tex. Civ. Prac. & Rem.Code Ann. § 101.022(b) (Vernon 1997). When there is a special defect, the state owes highway users the higher standard of care due invitees. *Payne,* 838 S.W.2d at 237. That duty is to either make the highway reasonably safe or to adequately warn of the hazard. *Id.*

■ A condition may constitute a special defect only if it is of the same kind or class as an excavation or roadway obstruction and presents "an unexpected and unusual danger to ordinary users of roadways." *State v. Rodriguez,* 985 S.W.2d 83, 85 (Tex.1999); *State Dept. of Highways & Pub. Transp. v. Kitchen,* 867 S.W.2d 784, 786 (Tex.1993) (per curiam); *see Burris,* 877 S.W.2d at 299. "Special defects unexpectedly and physically impair a car's ability to travel on the road." *Rodriguez,* 985 S.W.2d at 85.

■ Like an excavation or obstruction, a roadway covered with an excessive amount of loose gravel is not something motorists can reasonably be expected to anticipate. In the instant case, a stretch of roadway, 200 feet in length and consisting of a curve, was covered with one-half cubic yard of loose gravel. We conclude the loose gravel condition presented an unexpected and unusual danger to the ordinary user of FM 766.

TxDOT argues that even though there was gravel on the road, the road still maintained very good traction. This may be true, but the existence of traction does not discount the unexpected nature of the excess gravel on the road. Trooper Bartee testified he would not expect to find this amount of gravel on a highway without some kind of warning, and he felt it was unsafe. Emma Jean Losolla testified that she did not expect to see that much gravel on the road as she went into the curve. Keith Gohlke testified that if he had seen the curve in the condition it was in at the time of the accident, he would have considered it an unsafe condition. Elroy Molina testified that there was an "excess amount of gravel in the curve," and there was "more gravel than normal," at the scene of the accident.

TxDOT contends that in *City of San Benito v. Cantu,* 831 S.W.2d 416, 421 (Tex. App.—Corpus Christi 1992, no writ), this Court held there can be no special defect if a danger is open and obvious and observable by anyone. TxDOT contends that the "gravel in question was open and obvious to a reasonabl[y] prudent motorist exercising ordinary caution." TxDOT has misinterpreted *San Benito,* and its contention is without merit.

In *San Benito,* our discussion of "special defects" examined the holding in *Payne v. City of Galveston,* 772 S.W.2d 473, 477 (Tex.App.—Houston [14th Dist.] 1989, writ denied). We stated: "*Payne* suggests that a special defect precludes actual knowledge and that there can be no special defect if a danger is open and obvious and

observable to anyone." *San Benito*, 831 S.W.2d at 421. This is only a discussion of the reasons given by the *Payne* court for not finding the drop-off of the seawall a "special defect." The *Payne* court discussed the drop-off as a dangerous condition observable by everyone and that Mrs. Payne had walked along the seawall from one-half hour to one hour the day before and observed the drop-off during this walk, and Mr. Payne testified that he believed the drop-off was readily apparent to his wife. *Payne*, 772 S.W.2d at 477. This is the "obvious" dangerous situation that this Court referred to in *San Benito*. See *San Benito*, 831 S.W.2d at 421. In *San Benito*, we merely discussed the suggestions made by the *Payne* court concerning the relationship between an obvious danger and the finding of a "special defect;" we did not hold that "open and obvious" characteristics precluded a "special defect." *Id.*

We believe the loose gravel condition in this case is more similar to the "slick, muddy" condition mentioned in *State v. McBride*[4] and the "water on the roadway" condition mentioned in *Department of Highways & Pub. Trans. v. Zachary*.[5] Both of these conditions were found to be "special defects." We conclude the loose gravel condition was a special defect within the meaning of section 101.022(b) of the civil practice and remedies code. We hold the trial court did not err in ruling, as a matter of law, that the condition was a special defect. TxDOT's first point of error is overruled.

### 5. *Motion for Judgment Notwithstanding the Verdict*

In its second and third points of error, TxDOT contends the trial court erred in overruling its motion for judgment notwithstanding the verdict because the loose gravel constituted a "premises defect" and there is no evidence to support the jury findings that: (1) TxDOT had actual knowledge of the dangerous condition and (2) Emma Jean Losolla did not actually know of the condition on the road.

■ We have concluded that the roadway condition was a special defect within the meaning of section 101.022(b) of the civil practice and remedies code. In a "special defect" case the state owes the same duty to warn as a private landowner owes to an invitee and the elements of proof required to establish a breach of this duty are: (1) a condition of the premises created an unreasonable risk of harm to the invitee; (2) the owner knew or reasonably should have known of the condition; (3) the owner failed to exercise ordinary care to protect the invitee from danger; and (4) the owner's failure was a proximate cause of injury to the invitee. *Payne*, 838 S.W.2d at 237.

Appellees did not have to prove that TxDOT had actual knowledge of the dangerous condition and that Emma Jean Losolla did not actually know of the condition on the road. TxDOT's second and third points of error are overruled.

The judgment of the trial court is AFFIRMED.

---

**4.** 601 S.W.2d 552 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.) (muddy, slippery conditions on road being reworked).

**5.** 824 S.W.2d 813 (Tex.App.—Beaumont 1992, writ denied) (*standing water on road*, between three and seven inches in depth, caused by the temporary repair of the road).