**TEXAS DEPARTMENT OF TRANSPORTATION, Appellant,**

v.

**Stephanie GUTIERREZ and Ronnie Gutierrez, Appellees.**

No. 04–06–00583–CV.

Court of Appeals of Texas, San Antonio.

Sept. 5, 2007.

Rehearing Overruled Oct. 31, 2007.

Adam W. Aston, Asst. Solicitor Gen., Michael H. Ratliff, Asst. Atty. Gen., Austin, for Appellant.

Thomas F. Nye, Vidaurri, Lyde, Gault & Quintana, L.L.P., Brett Anthony, Anthony Peterson & Purnell, L.L.P., Corpus Christi, for Appellees.

Sitting: CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

The Texas Department of Transportation ("TxDOT") appeals the district court's denial of its plea to the jurisdiction and argues that Stephanie and Ronnie Gutierrez's claims should be dismissed for lack of subject matter jurisdiction. We affirm the trial court's denial because the excessive gravel constituted a special defect and the jury found TxDOT failed to adequately warn of this defect. Also, because Ronnie Gutierrez is a "person injured" for purposes of the Texas Tort Claims Act, the trial court correctly denied the plea to the jurisdiction. Accordingly, we affirm the trial court.

### BACKGROUND

Stephanie Gutierrez was injured in a motor vehicle accident, on a curve of FM 624 in Jim Wells County, at approximately 6:30 a.m. on December 5, 2003. TxDOT was repairing FM 624, a three day process that involved tearing up the road surface and mixing cement with the milled pavement before applying the seal coat. To apply the seal coat, the roadway is swept, a layer of hot asphalt is applied, a layer of aggregate rock (gravel) is placed down, the aggregate is rolled to make it compact, and finally a second layer of hot asphalt and gravel is applied. Generally, after a layer of hot asphalt and gravel are applied, TxDOT waits for the seal to set before sweeping the excess gravel off the road. In this case, the second layer of hot asphalt and gravel was applied on December 4, 2003, but not swept until the afternoon of December 5th. Prior to the road repair, a "Curve Ahead" sign with a speed advisory of forty-five miles per hour was in place. Coinciding with the road repair, TxDOT posted a "Loose Gravel" sign.

On the morning in question, Stephanie was driving on FM 624 and her husband Ronnie was following several minutes behind. After Stephanie lost control of her car on the loose gravel, she called her husband and pulled off the roadway to inspect her car for damage. Shortly thereafter, Veronica Maldonado lost control of her car, at the same curve, and struck Stephanie. Maldonado testified she traveled FM 624 every day, that she noticed the curve and speed advisory signs and as she approached the curve, slowed her vehicle to approximately forty miles per hour. She further testified that she neither heard nor felt gravel hit her vehicle before she began to lose control and never saw Stephanie prior to hitting her. During trial, the Gutierrezes disputed TxDOT's claim of a Loose Gravel sign posted near the curve. However, after the close of evidence, and before closing arguments, the Gutierrezes stipulated to the presence of the Loose Gravel sign.

Following trial on the merits, the jury returned a verdict in favor of Stephanie, finding TxDOT negligent with respect to the condition of the road. The jury deter-

mined TxDOT was not liable for Ronnie's alleged bystander injury; however, the trial court granted Ronnie's motion for new trial. TxDOT's Motion for Judgment Notwithstanding the Verdict or, Alternatively, for a New Trial, was denied by the trial court. Based on the plaintiffs' stipulation regarding the Loose Gravel sign, TxDOT filed a post-trial plea to the jurisdiction arguing immunity under the Texas Tort Claims Act ("TTCA") alleging its duty to warn was discharged as a matter of law by the placement of the signs. The trial court denied the plea, and this accelerated appeal ensued.

TxDOT raises three issues on appeal: (1) the Gutierrezes cannot state an actionable premises-liability claim under the TTCA; (2) Ronnie's bystander claim fails to invoke a waiver of TxDOT's immunity; and (3) by failing to assert claims within the TTCA's waiver, the Gutierrezes failed to invoke the district court's subject matter jurisdiction.

### STANDARD OF REVIEW

■■■ Whether a trial court has subject matter jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). We, therefore, review the trial court's ruling de novo. *Id.* at 228. In considering jurisdictional pleas, we review the pleadings and evidence relevant to the jurisdiction issue. *Tex. Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex.2002) (citing *Texas*

*Dep't of Crim. Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001)). To the extent there are fact questions regarding jurisdictional issues, "the fact issue will be resolved by the fact finder." *Miranda,* 133 S.W.3d at 228. In this case, the plea to the jurisdiction was not raised until after all the evidence was submitted by the parties and the jury returned its verdict. The jury found TxDOT negligent with respect to the condition of FM 624.[1]

### SOVEREIGN IMMUNITY

The TTCA provides that the State waives its sovereign immunity for "personal injury and death so caused by a condition or use of … real property if the governmental unit would, were it a private person, be liable to the claimant …" TEX. CIV. PRAC. & REM.CODE Ann. § 101.021(2) (Vernon Supp.2006). In a premises liability claim, the duty owed by the governmental unit is dependent on the condition of the property. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022 (Vernon Supp.2006). If the road condition is an ordinary premise defect, the state owes the same duty a private landowner owes a licensee. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(c).

■■■ Generally, the duty a landowner owes a licensee is not to injure the licensee through willful, wanton or grossly negligent conduct. *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex.1992). The owner must also warn the licensee of, or make reasonably

---

1. The trial court gave the jury a charge that asked whether TxDOT's or Stephanie's or Veronica's negligence was a proximate cause of the occurrence. Along with the question the court gave the jury the following instruction:

 With respect to the condition of FM 624, Texas Department of Transportation was negligent if:

 A. The condition posed an unreasonable threat of harm; and

 B. Texas Department of Transportation knew or reasonably should have known of the danger; and

 C. Texas Department of Transportation failed to exercise ordinary care to protect motorists from the danger by both failing to adequately warn motorists of the condition and failing to make that condition reasonably safe.

safe, dangerous conditions of which the owner is aware and the licensee is not. *Id.*

 If, however, the condition is a "special defect," the state owes the same duty that a private landowner owes an invitee. *Id.* That duty "requires the landowner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a condition of the premises of which the owner is or reasonably should be aware." *Id.; City of Grapevine v. Roberts,* 946 S.W.2d 841, 842–43 (Tex.1997). *See also* TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(b). Under either theory, the plaintiff must prove the condition created an unreasonable risk of harm. *Payne,* 838 S.W.2d at 237.

On appeal, TxDOT contends it did not waive its immunity because: (1) the plaintiffs failed to establish that the gravel on FM 624 posed an unreasonable risk of harm; (2) regardless of the type of defect, TxDOT discharged any duty owed to the plaintiffs to protect them from danger by adequately warning of the gravel; (3) the plaintiffs' argument that different or additional signs should have been used interferes with TxDOT's discretionary decisions; and (4) any failure to warn on TxDOT's part was not the proximate cause of Stephanie's injuries.

## DANGEROUS CONDITION/SPECIAL DEFECT

### A. Defective Condition

 TxDOT argues the Gutierrezes failed to identify an actionable condition of real property under section 101.022 of the TTCA because the gravel on FM 624 was not a defective condition posing an unreasonable risk of harm.[2] TEX. CIV. PRAC. & REM.CODE. ANN. § 101.022(b). However, based on the jury findings and the instruc-

tions included within the charge, the jury impliedly found the gravel posed an unreasonable risk of harm. As discussed below, the evidence was sufficient to raise a fact issue regarding the defective condition which the jury resolved in favor of the appellees. Accordingly, we overrule this issue.

### B. Special Defect

 We next review the nature of the defect. Whether the condition constituted a special defect or an ordinary premises defect determines the duty TxDOT owed to the Gutierrezes. Special defects are road conditions of the same type and class as excavations or obstructions that "unexpectedly and physically impair a car's ability to travel on the road." *State v. Rodriguez,* 985 S.W.2d 83, 85 (Tex.1999). However, "conditions threatening normal uses of a road may be special defects even though they do not occur on the surface of a road." *Payne,* 838 S.W.2d at 238 n. 3. They must present an "unexpected and unusual danger to ordinary users of roadways." *Id.* at 838 S.W.2d at 238. Special defects are distinguished by some unusual quality outside the ordinary course of events. *Stokes v. City of San Antonio,* 945 S.W.2d 324, 326–27 (Tex.App.-San Antonio 1997, no writ). Whether a condition is a special defect is a question of law for the court. *Rodriguez,* 985 S.W.2d at 85; *Payne,* 838 S.W.2d at 238.

At least three other Texas appellate courts have determined that excessive gravel on the road constituted a special defect. In *Texas Dep't of Transp. v. O'Malley,* 28 S.W.3d 652 (Tex.App.-Corpus Christi 2000, pet. denied), TxDOT was conducting road maintenance similar to that in

---

**2.** In order to find TxDOT negligent, the jury instruction required a finding that the condi-

tion posed an unreasonable risk of harm.

the present case. During trial there was conflicting testimony regarding whether excessive gravel remained on the road after the seal coat was placed. The Corpus Christi court upheld the trial court's judgment finding the excessive gravel constituted a special defect stating, "Like an excavation or obstruction, a roadway covered with an excessive amount of loose gravel is not something motorists can reasonably be expected to anticipate." *Id.* at 656.

The case of *State v. Wollesen*, 93 S.W.3d 910 (Tex.App.-Austin 2002, no pet.), also involved road repairs similar to the present case. The Austin court compared the excessive amount of gravel to an unexpected obstruction that is difficult to navigate, and held the trial court properly found the loose gravel was a special defect. *Id.* at 913.[3] Likewise, in *Tex. Dep't of Transp. v. York*, No. 10–06–00210–CV, 234 S.W.3d 212, 2007 WL 2280391 (Tex.App.-Waco Aug.8, 2007, no pet. h.), the Waco court held loose gravel left on a road during repairs constituted a special defect based in part on the volume and looseness of the gravel and the number of accidents at the site. The case of *Montgomery County Precinct 1 v. Reed*, No. 09–06–402 CV, 2006 WL 3823897 (Tex.App.-Beaumont Dec.28, 2006, no pet.) (mem.op.), is distinguishable from the present case because the appellees failed to present any evidence regarding the amount of loose gravel, any unusual quality of the gravel, or that loose gravel was unexpected on a limestone base rural road. The appellate court, therefore, held appellees failed to establish the gravel constituted a special defect. *Id.* at *3.

Although the existence of a special defect is a question of law, the size of the dangerous condition should be considered in order to determine whether the condition constitutes a special defect. *Harris County v. Eaton*, 573 S.W.2d 177, 179 (Tex.1978). In the present case, several witnesses testified that the gravel along the curve was "excessive." Testimony established that four drivers, including Maldonado, lost control of their vehicles while driving on the curve. Ashley Bray, driving on FM 624 at approximately 4 p.m. on December 4, 2003, testified that she slowed to about sixty-five miles per hour as she rounded the curve when she lost control of her car. Bray admitted to having seen the forty-five mile per hour advisory sign and the Loose Gravel sign. Emily Gonzalez, also driving on FM 624 on at approximately 9:00 p.m. the same day, stated that she was driving at about sixty to sixty-five miles per hour when she lost control of her car as she went into the curve. She described the road as not very well-lit, with few lights and testified that she did not see the Loose Gravel sign. Gonzalez did, however, testify that even if she had seen the sign, she would not have expected the amount of gravel that was on the road. Bray and Gonzalez both believed they lost control of their car because of the excessive gravel.

The investigating officer, DPS Trooper Alonzo Almarez, testified that, in his opinion, four drivers losing control of their vehicles, in the same spot, was too much of a coincidence. Therefore, on the afternoon of December 5th, he requested TxDOT sweep the curve of excess gravel. Almarez considered the amount of loose gravel on the road an obstruction to safe and normal travel and stated that he slipped on the loose gravel upon getting out of his own vehicle. In his opinion, the four acci-

**3.** The court noted, however, the State did not challenge the special defect characterization on appeal. *Id.* at 913–94.

dents were caused, at least in part, by excessive gravel on the curve. Noel Ybarra, the TxDOT roadway maintenance supervisor, also agreed the amount of gravel on the road was excessive. Additionally, although the TxDOT crew chief, Jose Garcia, did not agree that the amount of gravel on the curve was excessive, he did agree that if excessive gravel is present on a road, it creates an unreasonably dangerous condition for the traveling public.

TxDOT's expert, Jeffrey Milburn, testified that typically five to ten percent of the gravel laid down is lost, or would become unstuck from the seal coat. He defined "excessive" as any situation in which the loss exceeded five to ten percent. The record reveals no witness quantified the word "excessive" and there is conflicting evidence regarding the size of the area covered with the loose gravel. Almarez testified the excessive gravel covered an area of about 200 to 250 yards in the area of the curve. Ybarra insisted the area covered 800 feet, and he explained that Almarez's estimate of 200 to 250 yards is about the same as 600 to 800 feet. No witness testified as to the depth or amount of the gravel or otherwise clarified their description of the gravel as being "excessive." While TxDOT alleges that the layer of gravel was "no more than one-half inch thick," TxDOT provides no record reference to support its statement and the record appears to be devoid of any evidence regarding the thickness of the gravel. *See, e.g., Wollesen,* 93 S.W.3d at 913–14 (concluding that loose gravel, one to two inches spread on top of hot, liquid asphalt

to seal cracks in the road, was a special defect); *O'Malley,* 28 S.W.3d at 656 (concluding that half cubic yard of loose gravel on stretch of roadway, 200 feet in length and consisting of a curve, was a special defect).[4]

Here, while no witness quantified the word "excessive" in relation to the depth or amount of loose gravel on the road, several witnesses testified that there was "excessive" gravel along the curve where the accident occurred. Additionally, these witnesses, including Almarez, the investigating officer, attributed the excessive gravel to four other accidents, at the same location, involving drivers losing control of their cars. We, therefore, conclude that the excessive gravel in this instance qualifies as a special defect.

### ADEQUACY OF WARNING

Because the loose gravel was a special defect, TxDOT owed Stephanie the higher standard of care due to invitees, a duty to either make the highway reasonably safe or to adequately warn of the hazard. *Payne,* 838 S.W.2d at 237. The jury was instructed and impliedly found that TxDOT "failed to exercise ordinary care to protect motorists from the danger by both failing to adequately warn motorists of the condition and failing to make that condition reasonably safe."

On appeal, TxDOT argues it was not required to make the roadway reasonably safe because it adequately warned of the condition. Based on the Gutierrezes' admission that TxDOT posted a Loose Gravel sign and a Curve Ahead sign with a

---

**4.** *See also, e.g., Harris County,* 573 S.W.2d at 178–80 (concluding that an oval-shaped hole, six to ten inches deep, extending across ninety percent of roadway, which caused car traveling at thirty-five miles per hour to flip over, was a special defect); *Morse v. State,* 905 S.W.2d 470, 475 (Tex.App.-Beaumont 1995, writ denied) (substantial evidence presented

on depth and length of drop-off and that drop-off prevented tires from re-entering roadway); *State v. McBride,* 601 S.W.2d 552, 558 (Tex.Civ.App.-Waco 1980, writ ref'd n.r.e.) (holding that a slick, muddy excavation of the highway so severe a car traveling at less than thirty-five miles per hour went out of control was a special defect).

forty-five mile-per-hour speed advisory, TxDOT asserts its duty to warn was discharged as a matter of law. We disagree.

### A. Discretionary Act

 Although the jury impliedly found the signage inadequate to warn, TxDOT argues that any question about the adequacy of the warning signs is irrelevant because section 101.056 of the Texas Practice and Remedies Code creates immunity for its discretionary decisions regarding the type of warning sign as well as when and how to place warning signs. TEX. CIV. PRAC. & REM.CODE ANN. § 101.056 (Vernon 2005).[5] There is no dispute in the record that the signs complied with the Texas Manual on Uniform Traffic Control Devices ("MUTCD") and were of the proper size, color, and alignment. Although Ybarra agreed the amount of gravel on the road was excessive, he argued that the MUTCD did not require him to place any additional signage. Because the Loose Gravel sign was about 500 yards up the road from the Curve Ahead sign, TxDOT concludes it discharged its duty to warn, which in turn, discharged its duty to exercise reasonable care to protect any licensee or invitee from danger. In response, the Gutierrezes assert that TxDOT's argument ignores the duty to warn of special defects required under section 101.060. TEX. CIV. PRAC. & REM.CODE ANN. § 101.060. Section 101.060 specifically provides that immunity is not waived for a claim arising from the failure of a governmental unit to place a road sign or the condition of a road sign but it specifically does not apply "to the duty to warn of special defects." *Id.*

The case of *State v. Rodriguez,* 985 S.W.2d 83 (Tex.1999), is dispositive of the issue. In *Rodriguez,* the decedent was killed when his tractor-trailer rig hit a bridge abutment along the side of a detour on U.S. Highway 77 in Corpus Christi. *Id.* at 85. The detour directed traffic onto a frontage road to avoid a large excavation on U.S. 77. *Id.* After following the detour for approximately one mile, the decedent failed to complete a ninety-degree turn in the detour, driving onto the detour shoulder and side-swiping the bridge abutment, causing his rig to roll-over. *Id.* The court addressed the tension between the immunity for discretionary powers set forth in section 101.056 and the duty to warn of special defects described in sections 101.060(c) and 101.022(b). TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.022(b), 101.056, and 101.060(c). The court held:

> [U]nder section 101.060 the State retained its immunity for warning sign placement because it also was a discretionary act *and because the detour was not a special defect.*
>
> . . . .
>
> However, even if the sign placement decisions were discretionary, the State still waives immunity if the detour's alleged defects were special defects. Under this record this detour is neither an "excavation or obstruction," nor a similar condition presenting an "unexpected and unusual danger to ordinary users of the roadway," and as such is not a special defect as a matter of law.....

*Id.* at 86 (citations omitted, emphasis added). *See Harris County v. Estate of Ciccia,* 125 S.W.3d 749, 755 (Tex.App.-Hous-

---

5. "This chapter does not apply to a claim based on: (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. § 101.056.

ton [1st Dist.] 2004, pet. denied) (Even though road design is initially discretionary, failure to warn of unlit culvert special defect waived county's immunity under 101.060(b)).

### B. Adequacy of Warning

■ The fact that the excessive gravel was a special defect created a duty for TxDOT to adequately warn the Gutierrezes of the hazardous condition of the road. The evidence at trial supported a lack of adequate warning despite the placement of the Loose Gravel sign. David Steitle, the Gutierrezes' expert, opined that the Curve Ahead sign, which had been in place for years, and the Loose Gravel sign were inadequate warnings. He said the purpose of warning signs is to give roadway information to drivers unaccustomed to the road and to warn of a specific condition. Steitle acknowledged that the Curve Ahead sign, with the speed advisory, was adequate because it told the driver about the specific condition (a curve ahead) and told the driver what to do (slow to forty-five miles per hour). He concluded, however, that the Loose Gravel sign was inadequate because it failed to specify the hazard. In his opinion, loose gravel in and of itself is not a hazard, and drivers could simply interpret the sign as warning against damage to their vehicles and not as a warning that a hazard existed that would cause them to lose control of their vehicle. Steitle also considered the sign inadequate because the sign was only posted for one day and the accident occurred at night. Finally, Steitle testified that TxDOT should have posted a lighted, changeable message board telling drivers the condition of the road and advising of the action to take. Ybarra, on the other hand, disagreed that different warning signs were necessary, but conceded that TxDOT could have posted an advisory or warning sign informing drivers to slow down because of a specific road hazard. Milburn also conceded TxDOT has the ability to post an advisory speed limit sign for out-of-the-ordinary road conditions.

### CAUSATION

■ TxDOT claims the Gutierrezes failed to establish an inadequate warning was the proximate cause of Stephanie's injuries because she knew about the defect at the time she was injured. Stephanie's knowledge of the road condition is relevant only if the defect in this case was a premises defect rather than a special defect. *See County of Cameron v. Brown*, 80 S.W.3d 549, 557–58 (Tex.2002) (in a premises defect case, licensee must prove she did not know of the dangerous condition). Because we hold that the condition was a special defect Stephanie's knowledge is irrelevant.

■ TxDOT also argues, that even if Stephanie was unaware of the road condition, she became aware of the condition when she encountered the gravel on the road, voluntarily got out of her car, and stood by her car to inspect for any damage caused by the loose gravel. According to TxDOT, Stephanie "had multiple opportunities to leave the allegedly defective premises .... [and] she made an informed decision to remain on the roadway for a minute or two...." Thus, TxDOT concludes, any failure to warn on its part was not the proximate cause of Stephanie's injuries. The jury heard the evidence and impliedly found that the negligence of TxDOT proximately caused the occurrence. Because there was some evidence to support the jury's finding, we overrule this issue.

### BYSTANDER CLAIM

The jury found that Ronnie did not suffer a bystander injury. The trial court, however, granted his motion for new trial

on the bystander issue. On appeal, TxDOT argues the trial court lacks jurisdiction over Ronnie's claim because the Texas Legislature has not given consent to bystander suits against a state entity. As its sole support for this argument, TxDOT points to the TTCA which does not expressly waive immunity for these types of claims. This is an issue of first impression for our court, and the Texas Supreme Court has not addressed the issue.

 Although the TTCA does not expressly waive immunity for bystander claims, two sister courts have analyzed whether the TTCA permits a cause of action for bystander injuries. *See Hermann Hosp. v. Martinez*, 990 S.W.2d 476 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); *City of Austin v. Davis*, 693 S.W.2d 31, 34 (Tex.App.-Austin 1985, writ ref'd n.r.e.). In *Hermann Hospital*, a mother and her two children were injured in an automobile accident. *Hermann Hospital*, 990 S.W.2d at 478. The City argued that the trial court erred in permitting recovery of monetary damages from the City for bystander injuries on the grounds that section 101.021 of the TTCA does not waive governmental immunity for bystander claims. *Id.* The Houston court rejected the City's argument holding bystander recovery was available under the TTCA. The court relied on *City of Austin*, wherein the father of the victim asserted a claim for mental distress and physical injuries sustained, as a bystander after discovering his son's body at the base of an airshaft. *City of Austin*, 693 S.W.2d at 34. The Austin court held the father's bystander suit was not derivative of the statutory wrongful death action of the other wrongful death beneficiaries. *Id.* His suit was for injuries he personally suffered and not for damages to which he would have been

entitled as a consequence of his son's wrongful death. *Id.* Therefore, the court concluded he was a "person injured" for purposes of the damages cap. *Id.; see also Hermann Hosp.*, 990 S.W.2d at 479–80. We agree with this line of cases that a bystander can be considered a "person injured" for purposes of the TTCA thus resulting in a waiver of TxDOT's sovereign immunity.[6]

## CONCLUSION

Based on the foregoing, we affirm the trial court's ruling on TxDOT's plea to the jurisdiction as to the premises claim, as well as, Ronnie's bystander claims.

Dissenting opinion by SANDEE BRYAN MARION, Justice.

I must respectfully dissent because I do not believe the gravel on the road in this case rises to the level of a special defect.

A special defect must be a condition of the same kind or class as an excavation or roadway obstruction and present "an unexpected and unusual danger to ordinary users of roadways." *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 238 (Tex. 1992); *see also State Dep't of Highways v. Kitchen*, 867 S.W.2d 784, 786 (Tex.1993) (icy bridge during conditions of freezing temperatures was something motorists can and should anticipate); *County of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex.1978). Special defects unexpectedly and physically impair a car's ability to travel on the road. *See, e.g., Morse v. State*, 905 S.W.2d 470, 475 (Tex.App.-Beaumont 1995, writ denied) (holding that ten-inch drop-off along shoulder that prevented car's left wheels from reentering the roadway once they had slipped off was a special defect).

6. We note that the only issue before us is whether the trial court has jurisdiction to hear Ronnie's bystander claim, we do not address the merits of such a claim.

**138**

Typically, conditions on or around roadways that courts have found to be special defects possess unexpected and unusual dangers toward ordinary users of the roadways, and the conditions are substantial in size. *See County of Harris,* 573 S.W.2d at 178–79 (concluding that an oval-shaped hole six to ten inches deep extending across ninety percent of roadway, which caused car traveling at thirty-five miles per hour to flip over, was a special defect). Thus, the size of the dangerous condition should be considered in determining whether the condition constitutes a special defect. *County of Harris,* 573 S.W.2d at 179; *see also Montgomery County v. Reed,* No. 09–06–402–CV, 2006 WL 3823897, at *3 (Tex.App.-Beaumont Dec.28, 2006, no pet.) (court held plaintiffs did not establish that loose gravel, without evidence of an excessive amount, was unexpected on a limestone-based rural road).

Here, it is true that several witnesses described the amount of gravel as "excessive." Trooper Almanza also said he slipped on the gravel exiting his vehicle and he thought four drivers losing control on the same spot too much of a coincidence. However, two of these drivers, by their own admission, were driving well in excess of the speed limit as they rounded the curve. Although there was some evidence about the size of the area covered with gravel, no evidence was admitted as to the depth or amount of gravel on the curve. No witness quantified "excessive."

Further, to constitute a special defect, the condition must unexpectedly impair the ordinary user of the roadway. Although disputed during trial, the parties stipulated after close of evidence to the existence of a Loose Gravel sign at the scene. The Loose Gravel sign as well as the Curve Ahead with speed advisory sign met the requirements of the Texas Manual on Uniform Traffic Control Devices. With these signs in place, the condition was not "unexpected." Therefore, I would hold that the record does not establish, as a matter of law, that the amount of gravel on the road constituted a special defect. Because I do not believe a special defect exists in this case, TxDOT is immune from suit on the issue of whether it failed to adequately warn because it should have, but did not, place different signs at the scene. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.56; 101.060 (Vernon 2005).

For these reasons, I would reverse the trial court's judgment and render a dismissal in favor of TxDOT.