including the need to replace detention ponds and the loss of a number of parking spaces. For this reason, we reverse in part the judgment of the lower courts and remand this action for new trial in accord with our opinion in *Schmidt*.

The State of Texas and the City of Austin brought suit to condemn a 10,433–square-foot strip of land from a 9.2–acre tract located at the corner of Peyton Gin and U.S. Highway 183, improved with a 109,000–square-foot shopping center, and owned by Centennial Mortgage Corporation, as successor in interest to Grand Central Station Shopping Center. The award for the strip taken is no longer in dispute. Centennial put on evidence to show the fair market value of the whole property before the condemnation, and the fair market value of the remainder, considering the effects of the condemnation. Its experts testified that this decrease in fair market value reflected the attributes of the remainder property that a would-be purchaser would consider, including the cost to cure the lost detention ponds, the decreased visibility, the decreased accessibility, the increased risk of owning the property, the fact that the property would be subject to three to five years of construction and would, at the end, be adjacent to an elevated, limited-access freeway. The State unsuccessfully objected to the admission of this evidence. The jury found that the fair market value of strip taken was $162,600, and the decrease in fair market value of the remainder was $1,480,000. After subtracting the amount previously paid based on the award of the special commissioners, $110,078, the trial court rendered judgment for $1,532,522, plus interest. The court of appeals affirmed. 867 S.W.2d 769.

The State contends that the admission of evidence of damages held noncompensable in *Schmidt* was error, that this inadmissible evidence was the only evidence supporting an award of damages to the remainder, and that the trial court's judgment should be reformed to delete the award of damages for the remainder. We do not agree. Unlike *Schmidt*, this case involves claims of damages which may be compensable, *viz.*, the cost of replacing detention ponds and other improvements formerly located on the condemned strip of land, and the resulting loss of parking spaces on the remainder. The parties agreed that the cost for rebuilding the ponds and replacing other items was $110,000, but do not cite us to any evidence or agreement which would establish, as a matter of law, possible damages flowing from the lost parking spaces.

The landowners may have recouped part of the initial cost of building the retention ponds, to the extent the award for the condemned strip reflected an increase in value due the construction of the ponds thereon. But even assuming that the value awarded for the strip of land included some amount for this improvement, this amount would not necessarily compensate the landowner for all out-of-pocket expenses for building or rebuilding retention ponds. Damages due to required modifications to the remainder, as a result of the condemnation, or damages due to a loss of improvements on the remainder because of the condemnation may, on a proper showing, be compensable. While the parties agreed on $110,000 as the cost of rebuilding the retention ponds, we cannot determine what further portion of damages may also be compensable.

Accordingly, a majority of the Court, without hearing oral argument, grants the application for writ of error, reverses the judgment of the court of appeals, 867 S.W.2d 382, and remands the case to the trial court for further proceedings in light of our opinion in *Schmidt*.

**STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, Petitioner,**

v.

**Betty Lou KITCHEN and Charles Don Richards, Respondents.**

No. D–3258.

Supreme Court of Texas.

Dec. 8, 1993.

Mark Heidenheimer and Dan Morales, Austin, for petitioner.

Emmett Cole, Jr., Victoria and Jay L. Winckler, Austin, for respondents.

**786**

PER CURIAM.

The Per Curiam Opinion delivered on March 24, 1993 is withdrawn and the opinion of this date is substituted therefor.

Plaintiffs in this case recovered damages against the State Department of Highways and Public Transportation for injuries resulting from a motor vehicle accident on an icy bridge. A closely divided court of appeals sitting en banc affirmed the judgment of the trial court, holding that an icy bridge is a special defect within the meaning of Tex.Civ. Prac. & Rem.Code § 101.022. 840 S.W.2d 505. We disagree with the appeals court and reverse its judgment. Because there is no other basis to support plaintiffs' recovery, we render judgment that plaintiffs take nothing.

Calvin Kitchen was driving his pickup across a bridge early on a cold January morning when the vehicle skidded out of control on a patch of ice and collided with an oncoming truck. Kitchen was killed, and his passenger, Charles Richards, was injured. A standard "Watch for Ice on Bridge" sign with a warning light was posted before the bridge. The sign could be folded open or shut, and it had been open with the light flashing for the three days immediately prior to the accident. The day before the accident, despite the persistence of freezing, wet weather, the Highway Department folded up the sign based upon National Weather Service forecasts of warmer, drier weather for the next day. The day of the accident, the State dispatched crews to reopen the signs, but when the accident occurred the sign at the bridge had not been reopened.

■ Kitchen's widow and Richards sued the State for damages, alleging that the ice on the bridge was either a premise defect or a special defect, and that the State breached its duty to warn the travelers of the condition. The trial court submitted questions to the jury relating to both the premise defect and special defect theories of liability. One difference between these two theories is that liability for a premise defect requires a finding that the State actually knew of the dan-

gerous condition. *State Dept. of Highways v. Payne*, 838 S.W.2d 235, 237 (Tex.1992). The jury found that the State's negligent maintenance of the highway was the proximate cause of Kitchen and Richards' injuries, and that the ice on the bridge was a dangerous condition which the State negligently failed to make safe. The jury refused to find, however, that the State had actual knowledge of the dangerous condition prior to the accident, that the State failed to correct the sign within a reasonable time of actual notice, or that the State was grossly negligent. The jury also refused to find that Kitchen had actual knowledge of the presence of the ice, or that he was negligent in any respect. The trial court rendered judgment for the plaintiffs.

■ Absent a finding that the State knew of the dangerous condition prior to the accident, it is not liable to plaintiffs unless the condition was a special defect. *Id.* Whether a condition is a special defect is a question of law. *Id.* at 238. Special defects are excavations or obstructions, Tex.Civ. Prac. & Rem.Code § 101.022(b), or other conditions which "present an unexpected and unusual danger to ordinary users of roadways." *Payne*, 838 S.W.2d at 238. An icy bridge, under the circumstances of this case, is not such a condition. When there is precipitation accompanied by near-freezing temperatures, as in this case, an icy bridge is neither unexpected nor unusual, but rather, entirely predictable. Unlike an excavation or obstruction, an icy bridge is something motorists can and should anticipate when the weather is conducive to such a condition. The icy bridge in this case was a premise defect, and since the jury failed to find that the State was aware of the defect before the accident, the State is not liable to plaintiffs.

■ Plaintiffs assert two other theories of liability, both of which fail. First, they argue that by virtue of Calvin Kitchen's payment of vehicle registration and licensing fees, he and Richards were invitees on the highway, and the State owed them that duty of care owed to business invitees. Such fees were not paid "for the use of the premises", *i.e.*, the highway, within the meaning of sec-

tion 101.022(a) and did not make Kitchen and Richards invitees. Second, plaintiffs argue that the State was negligent per se in failing to provide for the efficient maintenance of the highways as required by TEX.CIV.STAT. ANN. art. 6674q–4. Plaintiffs contend that this statute protects all persons injured by highway conditions and imposes a higher duty on the State than its duty under § 101.-022 of the Tort Claims Act. We are obliged to read article 6674q–4 and section 101.022 together, however. The former imposes upon the State the responsibility to maintain its highways, but the latter determines the extent of the State's liability for failing to do so.

Accordingly, without hearing oral argument, a majority of the Court grants petitioner's application for writ of error, reverses the judgment of the court of appeals, and renders judgment that plaintiffs take nothing against defendant. TEX.R.APP.P. 170.

**Bonnie Gail WEIRICH, Appellant,**

v.

**Opal WEIRICH, Appellee.**

**No. D–0477.**

Supreme Court of Texas.

Dec. 22, 1993.

ON PETITION FOR PUBLICATION OF OPINION

Petition to order the court of appeals opinion published pursuant to Rule 90(c), Texas Rules of Appellate Procedure is denied.

*Concurring opinion* by ENOCH, J.

*Dissenting opinion* by DOGGETT, J., joined by GAMMAGE and SPECTOR, JJ.

Justice ENOCH concurs with denial of motion to publish.

My colleague, Justice Doggett, reiterates points that are routinely raised in the continuing debate about whether the opinions of intermediate appellate courts should be published. Belied by the stridency of his commentary, Justice Doggett's opinion, however, simply demonstrates the problem encountered with a rule that dictates non-publication of an intermediate appellate court's opinion unless the opinion satisfies certain criteria. That is, that judges can disagree on whether a particular decision meets the criteria of Rule 90(d) and should, therefore, be published.[1] TEX.R.APP.P. 90(d).

I agree that this case exposes the problem with the non-publication rule. However, as with all debates there is another side—the huge cost to legal practitioners, and ultimately the consumer of legal services, to maintain enormous libraries of legal treatises and case opinions. *See* David M. Gunn, *"Unpublished Opinions Shall Not Be Cited As Authority": The Emerging Contours of Texas Rule of Appellate Procedure 90(i),* 24 St. Mary's L.J. 115, 144 (1992); Hon. Frank G. Evans, Hon. James F. "Bud" Warren and Lynne Liberato, *To Publish or Not to Publish? That is the Question,* 24 Houston Law. 18 (July–August 1986).

The fourteen courts of appeals in this state are issuing opinions in thousands of cases every year. *See* OFFICE OF COURT ADMINISTRATION, OFFICIAL DOCKET ACTIVITY REPORT FOR THE FOURTEEN COURTS OF APPEALS 6

---

1. Justice Doggett implies that the courts of appeals are somehow acting erroneously by not publishing their opinions. 867 S.W.2d at 789. To the contrary, Rule 90(d) works the reverse. Opinions are *not* to be published unless the opinion satisfies the elements for publication set forth in that rule, in which event the courts of appeals are then to order that the opinion be published. Rule 90(d) states:

    An opinion by a court of appeals shall be published *only if,* in the judgment of a majority

of the justices participating in the decision, it is one that (1) establishes a new rule of law, alters or modifies an existing rule, or applies an existing rule to a novel fact situation likely to recur in future cases; (2) involves a legal issue of continuing public interest; (3) criticizes existing law; or (4) resolves an apparent conflict of authority.

TEX.R.APP.P. 90(d) (emphasis added).