Maria Louisa RODRIGUEZ, et al., Appellants,

v.

**The STATE of Texas and The City of Corpus Christi, Appellees.**

No. 13–96–399–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 18, 1997.

Rehearing Overruled Feb. 5, 1998.

William Robert Anderson, III, Sorrell, Anderson & Lehrman, Corpus Christi, for Appellants.

Linda Flores Resendez, Asst. City Atty., James R. Bray, Jr., City Atty., Corpus Christi, Mark Heidenheimer, Asst. Atty. Gen., Highway Division, Laquita A. Hamilton, Deputy Atty. Gen. for Litigation, Jorge Vega, First Asst. Atty. Gen., Dan Morales, Atty. Gen., Grady Click, Asst. Atty. Gen., Highway Division, Austin, for Appellees.

Before DORSEY, FEDERICO G. HINOJOSA, Jr., and RODRIGUEZ, JJ.

## OPINION

DORSEY, Justice.

This is a suit for damages for the wrongful death of Juan Garcia Rodriguez. Appellants sued appellees, the State of Texas and the City of Corpus Christi, for negligence after Rodriguez's tractor-trailer rig hit a bridge abutment located on a detour at a highway-interchange construction site. The trial court granted summary judgment for appellees, and appellants appeal by six points of error. We affirm in part and reverse and remand in part.

On December 13, 1990, Juan Garcia Rodriguez was driving a tractor-trailer rig north on U.S. Highway 77. A new interchange was being constructed at the intersection of U.S. 77 and Interstate Highway 37 in Corpus Christi, and a massive construction project was underway. All traffic on U.S. 77 north was detoured around a large excavation. While following that detour, Mr. Rodriguez's truck hit a bridge abutment and rolled over, causing his death.

Appellants alleged his injuries and death were caused by the negligence of the State of Texas and the City of Corpus Christi in that an unreasonably dangerous condition existed at the detour. They alleged the excavation and detour constituted a special defect causing unusual traffic conditions that are not normally encountered by motorists: a sharp right turn; decreasing highway speeds; an incline with blind or limited sight; confusing directions; and other similar conditions. They claim the State failed to provide adequate warning of these conditions created by the excavation.

The State moved for summary judgment on sovereign immunity grounds making two arguments. First, that it was performing a discretionary act and was thus exempted from the Tort Claims Act, under section 101.056, Texas Civil Practice and Remedies Code.[1] Second, because the engineer employed by the State who designed the detour and placement of associated warning signs was immune from suit under the doctrine of official immunity, the State is also immune from suit, for under the Tort Claims Act, the State is only liable when a private individual would be. The State contended a governmental entity is entitled to assert and have considered a motion for summary judgment based on official immunity of an employee, even if the employee is not a party to the lawsuit or the negligence of that particular employee is alleged.

---

1. This section provides:
   This chapter does not apply to a claim based on:
   (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or
   (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.
   Tex.Civ.Prac. & Rem.Code Ann. § 101.056 (Vernon 1997).

The State's summary judgment proof included the affidavits of William Coltharp and Patrick Norrell. Coltharp, an engineer with Coltharp Engineering Associates, described the detour and the site of the accident, the speed limit, and warning signs. He concluded the fifteen-mile-per-hour speed limit was reasonable, that there were adequate warnings of the sharp left turn where the accident occurred, and that Mr. Rodriguez's truck "could have safely traversed the sharp left turn at a speed of 15 miles per hour."

Patrick Norrell was the Corpus Christi area engineer for the Texas Department of Transportation. He was responsible for all the design, construction, and maintenance within the location where this accident occurred. This included designing the plan for traffic traveling on the highway while the construction was in progress. His affidavit stated, in part:

> The traffic control, including signs, signals and traffic control devices, shown on the diagram [attached to the affidavit of Mr. Coltharp] are the ones I had determined to be appropriate in my engineering judgment. The roadway design and warnings shown on the Coltharp drawing are exactly what I intended to have in place on December 13, 1990, based upon my best engineering judgment. The detour design and warnings met all legal requirements.

He also stated that after Mr. Rodriguez's accident, he and other engineers from the Corpus Christi District office of the Department of Transportation made "follow up investigations of the detour warnings" and determined the warnings in place were appropriate and no changes or additions were needed.

The City moved for summary judgment on the grounds that the road construction where the accident happened was a State project, and the City was not involved in any construction planning or design decisions. State engineers designed the detour roadway and curve in question, including the warnings associated with the curve. David Seiler, traffic engineer for the City, so stated in his affidavit.

Appellants responded to the motion and attached the affidavit of Gary Nelson, Ph.D., a technical consultant in the fields of safety engineering, safety management, human factors engineering, and occupational health engineering. In arriving at the opinions expressed in his affidavit, he reviewed the depositions of Patrick Norrell and William Coltharp, among other items.[2]

In his affidavit, Dr. Nelson named certain characteristics of the detour that made it dangerous and were not normally encountered by motorists. He included an abrupt decrease in the speed, from forty miles-per-hour to fifteen miles-per-hour, a relatively steep incline, a sharp ninety-degree turn, obscured vision of the roadway, and an immediate potential lane change after cresting the top of the hill. These special conditions were caused by the excavation and construction of an overpass, because the excavation was an obstruction in the normal area of travel. Dr. Nelson found the existing warnings to be inadequate in several particulars:

(a) There was no "REDUCED SPEED AHEAD" sign when the speed was reduced from 40 MPH to 15 MPH. A "REDUCED SPEED AHEAD" sign ... to prepare motorists for an otherwise sudden and significant reduction of speed such as a reduction of 40 MPH to 15 MPH.

\* \* \* \* \*

(b) There was no "ROADWAY INCLINE" signage. "ROADWAY INCLINE" signage "W7–1" or "W7–1b" ... a pictorial sign with a truck on an incline ... to warn motorists, and especially large truck traffic, of the existence of an incline within an already obscured roadway area.

\* \* \* \* \*

(a) As motorists begin to descend the incline in this matter, an unmarked *right* turn is encountered, requiring a possible lane change. There is no detour signage prior to the crest of the incline notifying motorists "SH–77 and U.S.–37 [sic] DETOUR—LEFT LANE or MERGE LEFT."

2. The summary judgment record included these depositions.

* * * * *

(b) At the location of the 90–degree left turn in this matter, according to photographs taken while the truck was still turned over, it appears that *only two* "CHEVRON" (<) signs (CW1–8)* were utilized to denote the location of the sharp left turn. In the alternative, multiple "LEFT ARROW" (CW1–6)* signs, including "LEFT ARROW DETOUR" (M4–10L)* signs, should have been used at this location in combination with additional "15 MPH" signs. There was no such signage.

* * * * *

(c) Given the unusual combination of hazards encountered by motorists in this matter (and given the understood history of accidents "in this area"), one or more signs indicating "DANGEROUS ROADWAY AHEAD" should have been used in combination with "OBSCURED VISION," "HIGHWAY INCLINE," "90–TURN TO THE LEFT," AND "15 MPH" signs to present advanced notice of the full nature [of] the dangerous conditions ahead. There were no such signs. Further, given the combination of hazards presented to motorists and the critical need for motorists to understand the dangerous nature of such multiple hazards, redundant "DANGEROUS ROADWAY AHEAD" signage would also be warranted.

The trial court granted summary judgment for appellees without specifying the ground or grounds on which it relied.

*Standard Of Review*

To prevail on a summary judgment motion, a movant must establish that no genuine issue about any material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995) (per curiam). A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action or who conclusively establishes all of the elements of an affirmative defense is entitled to a summary judgment. *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993); *Montgomery v.*

*Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). In reviewing a summary judgment, we must accept as true evidence in favor of the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, an appellate court will affirm a summary judgment if any of the theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989).

By points one, three, and five, appellants assert the trial court erred in granting the State's motion for summary judgment that was based on its sovereign immunity. Sovereign immunity protects governmental entities from liability, *Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex.1994), but the State has waived that immunity from suit in particular circumstances through the Texas Tort Claims Act. That act must be examined to determine if the State has waived its immunity, and if the conditions of waiver have been met, the suit may proceed.

■ The Tort Claims Act provides the State is liable for "personal injury and death so caused by a condition or use of . . . real property if the governmental unit would, were it a private person, be liable to the claimant. . . ." TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997). The general standard of care the State owes as an owner or occupier of realty is that owed to a licensee. TEX.CIV.PRAC. & REM.CODE ANN. § 101.022(a) (Vernon 1997). However, subparagraph (b) of § 101.022 provides this limitation of duty does not apply "to the duty to warn of special defects such as excavations or obstructions on highways. . . ." TEX.CIV. PRAC. & REM.CODE ANN. § 101.022(b) (Vernon 1997). When there is an excavation or obstruction, the State owes the users of the highway the higher standard of care due invitees. *State Dept. of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex. 1992). That duty is to either make reasonably safe or to adequately warn of the hazard. *Payne,* 838 S.W.2d at 237.

Whether a condition is a regular premises defect or a special defect is a question of law. *State v. Burris*, 877 S.W.2d 298, 299 (Tex.1994) (per curiam); *Payne*, 838 S.W.2d at 238. A condition may constitute a special defect only if it is an excavation, obstruction, or some other condition which presents "an unexpected and unusual danger to ordinary users of roadways." *State Dept. of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex.1993) (per curiam). *See Burris*, 877 S.W.2d at 299.

The accident in which Mr. Rodriguez was involved happened at the reconstruction of an intersection of major highways, U.S. 77 and Interstate 37. An excavation was dug there in order to create an overpass, and traffic, including Mr. Rodriguez, was routed on a detour around the excavation. Such an excavation in the roadway is a special defect, and the statute expressly refers to the duty to warn of excavations. Similarly, the hazards of the detour around the excavation are part of the special defect when they present "an unexpected and unusual danger to ordinary users of roadways." *Kitchen*, 867 S.W.2d at 786. As such, there is a duty to adequately warn the users of the highway of the hazards they will encounter on the detour or to make it reasonably safe. We hold the excavation and resulting detour to be a special defect.

Having held the construction site where the accident occurred to be a special defect, the State owes the same duty of care to Rodriguez that a private landowner owes an invitee. *Payne*, 838 S.W.2d at 237. In order to recover, appellants must prove that (1) the condition created an unreasonable risk of harm to the invitee; (2) the State knew or reasonably should have known of the condition; (3) that the State failed to exercise ordinary care to protect the invitee from danger; and (4) the State's failure was a proximate cause of injury to the invitee. *Payne*, 838 S.W.2d at 237, *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983). The State owed Rodriguez the same duty to warn that a private landowner owes an invitee. TEX.CIV.PRAC. & REM.CODE ANN. § 101.022(b) (Vernon 1997).

In his affidavit, Dr. Nelson stated the State failed in its duty to properly warn motorists of the special conditions they were approaching in a proper manner to give motorists sufficient information and time to comprehend the full nature of the conditions and initiate the required response to successfully cope with the situation. Although the affidavits of William Coltharp and Patrick Norrell are evidence that the warnings provided were adequate, there is a fact issue concerning the adequacy of the warnings. Because the adequacy of the warnings must be determined by the factfinder, summary judgment was improper for the State because it is not immune from suit.

The State also moved for summary judgment on the ground of sovereign immunity based on official immunity of governmental employees. Official immunity protects individual governmental officials from liability. *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex.1995). If an employee of the governmental unit is protected from liability by official immunity, the governmental unit's sovereign immunity under section 101.021(1) of the remedies code remains intact. *DeWitt*, 904 S.W.2d at 653. When the liability is based on a governmental employee's *use or misuse of tangible personal or real property* under section 101.021(2), the employee's official immunity also passes through to the governmental entity. *DeWitt*, 904 S.W.2d at 654. However, "sovereign immunity, based on a finding of official immunity on behalf of an employee of a governmental unit, does not exist for claims asserted under subsection 2 of section 101.021 of the Texas Tort Claims Act regarding a *condition* of tangible personal or *real property.*" *City of Corinth v. Gladys*, 916 S.W.2d 618, 623 (Tex.App.—Fort Worth 1996, no writ) (emphasis added). See *Texas Youth Comm'n v. Givens*, 925 S.W.2d 760, 763 (Tex.App.—Austin 1996, no writ).

As the supreme court stated in *DeWitt v. Harris County*, "With premise defects, liability is predicated not upon the actions of the governmental unit's employees but by reference to the duty of care owed by the governmental unit to the claimant for premise and special defects as specified in

section 101.022 of the Texas Tort Claims Act." *DeWitt,* 904 S.W.2d at 653. The cause of action asserted here against the State arose from the State's duty to maintain its highways in reasonably safe conditions and to warn of hazards as would a private landowner. Appellants are not attempting to establish liability on the State through the tortious acts of its employee via *respondeat superior.*

Accordingly, the trial court erred if it granted summary judgment on the ground of sovereign immunity based upon official immunity of governmental employees. We sustain points one, three, and five.

■ By points two, four, and six, appellants assert the trial court erred in granting summary judgment favorable to the City. The principal question before this Court is whether the City owed appellants a duty. David Seiler's affidavit showed the I–37 and U.S. 77 highway interchange construction, the area where Rodriguez's accident occurred, was a State project. The City and its employees did not design or supervise this construction. Any detour and traffic signalization or signage was the responsibility of the State. Because the State had responsibility for the design and construction of the detour, as well as the signalization and signage, the City owed no duty to Rodriguez. We overrule points two, four, and six.

We REVERSE and REMAND appellants' cause of action against the State of Texas. We AFFIRM the summary judgment for the City of Corpus Christi.