**Norman HARDING, Jr., Individually and On Behalf of The Estate of Nicole Harding, Deceased, Appellant,**

v.

**KAUFMAN COUNTY, Appellee.**

**No. 12–02–00304–CV.**

Court of Appeals of Texas, Tyler.

Aug. 29, 2003.

Andrew B. Sommerman, Sommerman, Moore & Quesada, L.L.P., Dallas, for appellant.

Robert S. Davis, Cooper, Flowers, Fraser & Derryberry, Tyler, Christi J. Kennedy, for appellee.

Panel consisted of GRIFFITH, J., DeVASTO, J., and BILL BASS, Retired Justice, Twelfth Court of Appeals, TYLER sitting by assignment.

## OPINION

BILL BASS, Justice.

Norman Harding, Jr., individually and on behalf of the estate of Nicole Harding, deceased, sued Kaufman County under the Texas Tort Claims Act alleging that a special defect on a road owned and maintained by the County was a proximate cause of Nicole's death.[1] The County's traditional motion for summary judgment alleged 1) that the condition of the road in question was not a special defect, but, if a defect at all, that it was a premises defect of which the plaintiffs had actual or imputed knowledge; and 2) the plaintiffs failed to give written notice of their claim and Kaufman County had no actual notice of their claim. The trial court granted summary judgment in favor of the County without stating the grounds. We reverse and remand.

### BACKGROUND

On August 2, 1996, Sue Harding and Nicole Harding were traveling north on County Road 314. Sue Harding, the driver, noticed the road was in worse condition than usual. Trying to steer the Jeep she was driving over the badly rutted, potholed surface of the road, Sue lost control of the vehicle. The vehicle turned over killing her daughter Nicole.

County Road 314 was an unpaved rural road heavily traveled by the gravel trucks of Meridian Aggregate Company for many years. The road surface was dirt, rock, and gravel. Because the use of the road by the gravel trucks was chiefly responsible for the road's unusually high maintenance cost, at least ten years before the accident, the gravel company had agreed informally with the County to maintain the road. The results of this attempted delegation of responsibility was not always satisfactory. Sue Harding traveled on the road every day although it had been four months since she had seen the stretch of road where the accident occurred. She stated, "Sometimes it would be halfway decent and sometimes it wasn't." At its best she said, "There weren't huge chuckholes, but many times you had to dodge a few small holes." She said that she often passed gravel trucks on the road and that, "if the holes were real bad, you had to pull over."

The section of the road where the accident occurred was in a creek bottom. When it rained, the trucks would make deep ruts. It had rained two days before the accident. The county commissioner

---

1. Sue Harding was also a party to the original suit, but is not a party to this appeal.

acknowledged that he had received several complaints about the road's condition. On the day of the accident there were obvious ruts in the soft roadway and holes in the road. Sue Harding described it as having "huge holes and bumps that were bad."

The Hardings gave no written notice to the County within six months after the accident. But, within weeks of the accident, the county commissioner of the precinct wrote the Hardings' investigator indicating that he knew of the accident and Nicole's death, and that he was aware that the Harding family were claiming the condition of the road caused Nicole's death. At a January 22, 1997 meeting, the Hardings' attorney stated that the County might be responsible for the accident because of the road's poor condition.

### STANDARD OF REVIEW

A summary judgment is reviewed de novo. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994). Summary judgments are reviewed according to the following standards:

1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985); *see also D. Houston, Inc. v. Love,* 92 S.W.3d 450, 454 (Tex.2002). Summary judgment is proper if the defendant disproves at least one essential element of the plaintiff's cause of action, or if the defendant establishes all the elements of an affirmative defense as a

matter of law. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).

### NOTICE

The County moved for summary judgment on the ground that it had not received notice of the accident as required by law. The Texas Tort Claims Act provides that "[a] governmental unit is entitled to receive notice of a claim against it ... not later than six months after the day that the incident giving rise to the claim occurred." TEX. CIV. PRAC. & REM.CODE § 101.101(a) (Vernon 1997). The statute requires the notice provide a reasonable description of 1) the damage or injury claimed, 2) the time and place of the incident, and 3) the incident. *Id.* This requirement for notice does not apply if "the governmental unit has actual notice that the death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." TEX. CIV. PRAC. & REM.CODE § 101.101(c) (Vernon 1997). Case law explains that a governmental unit must have knowledge of the injury, its alleged fault in causing the injury, and the identity of the persons injured. *Harrison v. Texas Dep't of Crim. Justice-Institutional,* 915 S.W.2d 882, 890 (Tex.App.-Houston [1st Dist.] 1995, no writ).

■ It is undisputed that the County did not receive a formal or written notice of the Hardings' claims within six months of the accident. There is, however, summary judgment evidence, amounting to more than a scintilla, that the County had actual notice of Hardings' claims. According to the affidavit of Alan Davis, the Hardings' investigator, he and the Hardings' lawyer met Ivan Johnson, the county commissioner for the precinct where the accident occurred and reviewed the police report of the accident. The accident site was located on a map. They discussed the

date of the accident, Nicole's death, and the possible liability of the County because of the road condition. This is sufficient notice to satisfy the statutory requirement.

Summary judgment cannot be sustained on the ground of lack of notice.

### SPECIAL DEFECT OR PREMISES DEFECT

The County moved for summary judgment contending that the condition at the accident site was a premises defect, if a defect at all. The summary judgment evidence, they argued, clearly established that Sue Harding had actual knowledge of the condition of the roadway. In order to recover for death or injury attributable to a premises defect, the plaintiffs must show that Nicole Harding had no knowledge of the defect. *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 237 (Tex.1992); *Corbin v. City of Keller*, 1 S.W.3d 743, 747 (Tex.App.-Fort Worth 1999, pet. denied). Harding maintains that the trial court erred in granting summary judgment because the condition of the road was a special defect and knowledge or lack of knowledge of the defect by Sue or Nicole Harding was immaterial.

If the road condition was a premise defect, the County owed the Hardings the same duty a private landowner owes a licensee. TEX. CIV. PRAC. & REM.CODE § 101.022(a) (Vernon 1997). If the road at the place of the accident was a special defect, the County owed Sue and Nicole the same duty to warn that a private land owner owes an invitee. TEX. CIV. PRAC. & REM.CODE § 101.022(b) (Vernon 1997); *Harris County v. Eaton*, 573 S.W.2d 177, 180 (Tex.1978).

In *Payne*, Justice Hecht compared the elements of proof required to show a breach of these two duties, absent willful, wanton, or grossly negligent conduct, which Harding did not attempt to prove.

To establish liability, a licensee must prove that:

(1) a condition of the premises created an unreasonable risk of harm to the licensee;

(2) the owner actually knew of the condition;

(3) the licensee did not actually know of the condition;

(4) the owner failed to exercise ordinary care to protect the licensee from danger;

(5) the owner's failure was a proximate cause of injury to the licensee.

*Id.* at 237 (citing *State v. Tennison*, 509 S.W.2d at 560, 562 (Tex.1974)); *see* RESTATEMENT (SECOND) OF TORTS § 343 (1965).

■ To establish liability an invitee must prove that:

(1) a condition of the premises created an unreasonable risk of harm to the invitee;

(2) the owner knew or reasonably should have known of the condition;

(3) the owner failed to exercise ordinary care to protect the invitee from danger;

(4) the owner's failure was a proximate cause of injury to the invitee.

*Payne*, 838 S.W.2d at 237 (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983); *Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 454–455 (Tex.1972)); *see* RESTATEMENT (SECOND) OF TORTS § 343 (1965).

■ The difference in the two theories of recovery most relevant to this case is that a licensee must prove that he did not know of the dangerous condition, while an invitee need not do so. Whether a condition is a premise defect or a special defect is a question of law for the court to decide. *See Eaton*, 573 S.W.2d at 179–80.

■ "Special defects are excavations or obstructions or other conditions which 'present an unexpected and unusual dan-

ger to ordinary users of roadways.'" *State Dep't of Highways v. Kitchen,* 867 S.W.2d 784, 786 (Tex.1993) (citation omitted). "A special defect must be distinguished by some unusual quality outside the ordinary course of events. A long-standing, routine, or permanent condition is not a special defect." *Mitchell v. City of Dallas,* 855 S.W.2d 741, 747–48 (Tex.App.-Dallas 1993), *aff'd,* 870 S.W.2d 21 (Tex. 1994). In *Kitchen,* the court said that when near freezing temperatures are accompanied by rain, an icy bridge is not unexpected or unusual but something a motorist should expect, and therefore not a special defect. *Kitchen,* 867 S.W.2d at 786. The Fort Worth Court of Appeals held in *Corbin v. Keller* that during a heavy thunderstorm, flood water at a low-water crossing "was neither unusual nor unexpected, but entirely predictable to the ordinary motorist traveling in such weather." 1 S.W.3d 743, 747 (Tex.App.-Fort Worth, 1999, pet. denied).

Harding cites *Eaton* for the proposition that potholes in a road are special defects. But *Eaton* is not analogous. Eaton's car flipped when it hit a hole in the asphalt pavement "varying in places from six to ten inches in depth and extending over ninety percent of the highway." The court commented that it was so large that it had reached the proportions of a ditch across the highway. *Eaton,* 573 S.W.2d at 179. The hole was four feet wide at some points and nine feet wide at others, and an approaching driver could see the hole when two hundred feet away but could not tell its depth from that distance. On a lightly traveled asphalt road such a condition would amount to an excavation or obstruction and would be both unusual and unexpected. On an unpaved heavily traveled rural road through a creek bottom, potholes and deep ruts are to be expected.

In *Texas Dep't of Transp. v. O'Malley,* the driver lost control of her vehicle on a curve where an excessive amount of loose gravel had been left on the asphalt paved farm-to-market road following repairs. 28 S.W.3d 652, 654 (Tex.App.-Corpus Christi 2000, pet. denied). The court concluded that one-half cubic yard of loose gravel over a two hundred stretch on a curve in a farm-to-market road met the "unexpected and unusual" test applied in *Payne* and *Kitchen,* and held the condition constituted a special defect. *Id.* at 657. Similarly in *Morse v. State,* there was a ten to twelve-inch drop-off between the traffic lane and the shoulder on an access road to the interstate highway. The speed limit was fifty miles per hour where the accident occurred. The court held that the State had a duty to warn, because the drop-off represented an unusual and unexpected hazard to ordinary users of the road and therefore a special defect. 905 S.W.2d 470, 474 (Tex.App.-Beaumont 1995, writ denied).

In *State Dep't of Highways v. Zachary,* 824 S.W.2d 813 (Tex.App.-Beaumont 1992, writ denied), the concrete surface of the road had buckled because of heat expansion. As a temporary measure, the highway department used asphalt to smooth over the "blow up" for motorists. When it rained, the ramp caused the buckling, and temporary repair caused water to pond across the roadway where the speed limit was fifty miles per hour. Zachary drove into the ponded water and lost control of his vehicle. The vehicle jumped the curb and hit a crane-truck. Zachary was killed. The court declined to overturn a jury finding that the "ramp" was an "obstruction" within the meaning of the Tort Claims Act. *Id.* at 817. The facts in *Zachary* satisfy the *Payne* and *Kitchen* "unexpected and unusual" test.

In *State v. McBride*, 601 S.W.2d 552 (Tex.Civ.App.-Waco 1980, writ ref'd n.r.e.), cited by Harding, the asphalt road surface was being reworked when a rain caused the reworked area to become "wet, sloppy and slick." McBride drove onto the reworked area past a barricade painted with black and white stripes and two warning signs, one of which read "slow" and the other "35 MPH." While on the area being reworked, McBride lost control of the vehicle which went off the road into the ditch and turned over. The Waco Court of Appeals was of the opinion that the condition in question was a special defect since it was an "excavation." The court also concluded that the attempt to warn motorists was inadequate because the warning did not describe the condition beyond the barricade. We are unable to reconcile the result in *McBride* with the holdings in other cases cited. However, we believe it significant that it was decided before the Texas Supreme Court opinions in *Payne* and *Kitchen.*

■ In the instant case, the deplorable condition of the road was obvious. The poor condition of County Road 314 after a rain was a routine situation. Given the recent rains and heavy truck traffic, the condition of the unpaved road in a creek bottom was neither unusual nor unexpected. We conclude that the condition of the road at the accident scene did not constitute a special defect.

■ Since we have determined that the road condition was not a special defect, we must now address whether the County was entitled to summary judgment under a premise defect theory. To prevail in a premise defect case brought under the Tort Claims Act, the plaintiff must prove each of the following elements:

(1) the condition of the premises created an unreasonable risk of harm;

(2) the governmental unit actually knew of the condition;

(3) plaintiff did not actually know of the condition;

(4) the governmental unit failed to exercise ordinary care to protect plaintiff from the dangerous condition; and

(5) the governmental unit's failure to exercise ordinary care proximately caused plaintiff's injury.

*See Payne,* 838 S.W.2d at 237.

■ The County contends that Nicole cannot recover because the summary judgment proof establishes that Sue Harding and Nicole actually knew of the road condition. We agree that Sue Harding's knowledge of the conditions of County Road 314 can be inferred from her almost daily use of the road and her description of its ordinary condition, traffic, and maintenance problems. She acknowledged that the road became potholed after rains and that she often had to dodge small chuckholes. Although she had not traveled on this particular section in four months, she stated that she was aware that it was in worse condition than usual. She stated that one had to stop when the holes were "real bad" and a gravel truck passed. She also said that before the accident, she noticed the road was in worse condition than usual. We believe that summary judgment was proper as to Sue Harding because the summary judgment evidence established that she knew of the dangerous condition. Sue Harding has not appealed from the judgment.

■ The record, however, tells us almost nothing about Nicole Harding. We can infer perhaps that she was too young to drive but old enough to fasten her own seat belt. But there is no evidence that she had traveled that road or was otherwise acquainted with its condition. In its motion for summary judgment, the County

did not assert that Nicole knew of the dangerous condition.

Viewing the evidence in the light most favorable to the Appellant, as non-movant, we conclude that the evidence does not establish as a matter of law that Nicole knew of the condition. Therefore, the trial court erred in granting summary judgment against Nicole.

The judgment of the trial court is reversed and remanded.