CITY OF DALLAS, Appellant/Cross–Appellee

v.

Manuel GIRALDO and Maria Giraldo, Individually and as the Sole Heirs and Legal Representatives of the Estate of Michael Giraldo, Deceased, Appellee/Cross–Appellant.

No. 05–07–00023–CV.

Court of Appeals of Texas, Dallas.

Aug. 25, 2008.

Rehearing Overruled Oct. 1, 2008.

Barbara E. Rosenberg, Johanna Greiner, City Attorney's Office, Dallas, for appellant.

John E. Wall, Jr., Law Offices of John E. Wall, Jr., Dallas, for appellee.

Before Justices MORRIS, O'NEILL, and BRIDGES.

## OPINION

Opinion By Justice BRIDGES.

Appellees/Cross–Appellants Manuel Giraldo and Maria Giraldo, individually and as the sole heirs and legal representatives of the estate of Michael Giraldo, filed a wrongful death suit against the City of

Dallas. The City filed a plea to the jurisdiction asserting governmental immunity. The trial court denied the City's plea to the jurisdiction as to two claims and granted it as to one claim. The City perfected this interlocutory appeal from the denial of its plea on the two surviving claims. The Giraldos assert a cross-appeal on the granting of the City's plea as to the claim dismissed by the trial court. We affirm in part and reverse and render in part.

## I. FACTS AND PROCEDURAL BACKGROUND

On August 3, 2002 at approximately 1:00 a.m., Michael Giraldo was a passenger in the back seat of a friend's car when the driver lost control of the car in a curve on the 6800 block of Williamson Road in Dallas. The car skidded off the west side of the roadway and collided with a bulldozer parked eight to ten feet off the edge of Williamson Road. Michael Giraldo died as a result of the accident. Another passenger in the car told Dallas police officer C.E. Fleming that the driver had been drinking alcoholic beverages earlier that evening and was speeding before the crash. Fleming observed the driver had bloodshot eyes and a strong odor of alcohol on his breath. The driver was unable to perform any of the field sobriety tests. Fleming determined the driver was intoxicated. The driver was arrested and charged with intoxication manslaughter. He later pleaded guilty to the manslaughter charge.

At the scene of the accident, Fleming took photographs of the road and observed the road was dry and free of debris. He saw no accumulations of mud or dirt on the road near the point where the car left the road. Fleming concluded the factors and conditions contributing to the accident were the driver's failure to drive in a single lane and driving under the influence of alcohol. He also concluded that excessive speed may have been a factor. Fleming did not state that mud, dirt, or debris were factors contributing to the accident.

On July 8, 2004, Manuel and Maria Giraldo, as individuals and representatives of the Estate of Michael Giraldo, filed suit against the City for wrongful death. The Giraldos allege that the driver of the car encountered mud and dirt in the roadway that caused him to lose control and collide with the City bulldozer. They also argue the bulldozer was too close to the roadway. They further allege the City had been excavating in the area and caused the mud to be deposited on the roadway. According to the Giraldos, these conditions were the proximate cause of Michael Giraldo's death.

The Giraldos assert these allegations establish a waiver of immunity under the Texas Tort Claims Act as a special defect, premise defect, or negligent operation of a motorized vehicle. The City challenged the allegations in a plea to the jurisdiction. The trial court held a hearing at which the City presented evidence that the bulldozer had not been excavating dirt but had been used to lift a tree that had fallen in a creek. The City presented evidence through Officer Fleming and two City employees that there was no dirt or mud on the road. The City presented the photographs taken by Fleming when he responded to the scene of the accident. Albert Rios, Jr., a member of the City work crew, testified that the crew swept the dirt from the road where they had been working. On August 2, 2002 at 3:00 p.m., when the crew had finished removing the tree, the road was clean. He stated the rest of the crew had cleaned the street of any dirt that fell from the truck tires when the trucks pulled away and no mud, clods of dirt, branches, or sticks were left in the street. The bulldozer was parked off the

road close to the creek because the crew did not have the manpower to move it. Rios also testified he and Brandel Banks, the bulldozer operator, were the last two workers to leave the area. The City presented the affidavit of City employee Rock Richardson demonstrating that the City had received no complaints about mud or dirt in the road before the accident.

The Giraldos presented the affidavit of Richard L. Turner, who observed the road during the daylight hours on August 4, 2002, took photographs, and performed an accident reconstruction. The photographs, which the Giraldos claim show significant amounts of dirt and mud on the roadway, were presented to the trial court. Turner stated in his affidavit that when he viewed the scene of the collision on August 4, 2002, there was mud and dirt on the surface of the road. Turner also stated that he had interviewed Brandel Banks and Banks did not recall sweeping the road. Turner opined that "there was so much dirt on the road surface it could not have been swept." Turner concluded in his affidavit that it was his "professional opinion that when the rear wheels lost traction and the car began to spin, the weight transferred within [driver's] vehicle and he would not have lost control, in all probability, but for the dirt and debris left by the City of Dallas work crew that had left the bulldozer on the side of the road."

After considering the evidence presented, the trial court granted the plea to the jurisdiction as to the claim of injury by motorized vehicle and denied the plea to the jurisdiction on the Giraldos' special defect and premise defect claims. From the denial of the plea on the special defect and premise defect claims, the City brings this interlocutory appeal. The Giraldos bring a cross-point complaining of the granting of the City's plea on the injury by motorized vehicle claim.

## II. STANDARD OF REVIEW

A city enjoys governmental immunity from suit for actions undertaken in the exercise of its governmental functions. *City of Dallas v. Blanton,* 200 S.W.3d 266, 271 (Tex.App.-Dallas 2006, no pet.). A valid immunity defense defeats the trial court's subject-matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex. 2004); *Blanton,* 200 S.W.3d at 270. We review the trial court's ruling on a plea to the jurisdiction under a de novo standard. *Miranda,* 133 S.W.3d at 228.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Miranda,* 133 S.W.3d at 227; *Gipson v. City of Dallas,* 247 S.W.3d 465, 469 (Tex.App.-Dallas 2008, pet. denied). If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact-finder. *Miranda,* 133 S.W.3d at 227–28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. In reviewing the evidence presented in support of the plea to the jurisdiction, we take as true all evidence favorable to the nonmovant. *Id.* We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* This procedure "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)," and the burden is on the governmental unit to meet the summary judgment standard of proof. *Id.* This standard protects

the plaintiffs from having to put on their case simply to establish jurisdiction. *Id.*

## III. WAIVER OF IMMUNITY UNDER THE TEXAS TORT CLAIMS ACT

Generally, the State of Texas has sovereign immunity from suit unless waived by the Legislature. *City of Dallas v. Reed,* 258 S.W.3d 620, 622 (Tex.2008). The Legislature has provided a limited waiver of immunity for premise defect and special defect claims under the Texas Tort Claims Act. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022 (Vernon Supp.2008). Specifically, the statute provides that "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *Id.* § 101.022(a). This limitation of duty "does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060." *Id.* § 101.22(b). "The legal distinction between a premises and special defect lies in the duty owed by the State to the person injured" and, specifically, the level of knowledge the plaintiff must show the State had at the time the injury occurred. *Reed,* 258 S.W.3d at 622 (citing *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 238 (Tex.1992)). Regardless, "[u]nder either theory, the plaintiff must prove the condition of the premises created an unreasonable risk of harm to the licensee or invitee, the owner failed to exercise ordinary care to protect the licensee or invitee from danger, and the owner's failure was a proximate cause of injury to the licensee or invitee." *Porter v. Grayson County,* 224 S.W.3d 855, 858 (Tex.App.-Dallas 2007, no

pet.). "Whether a condition is a premise defect or a special defect is a question of duty involving statutory interpretation and thus an issue of law for the court to decide." *Payne,* 838 S.W.2d at 238.

### A. Premise Defect

In regard to a claim for a premise defect, the government's duty is to not injure the claimant willfully, wantonly, or through gross negligence. *Reed,* 258 S.W.3d at 622; *Payne,* 838 S.W.2d at 237. This requires that where a landowner is aware of a dangerous condition, and the licensee is not, the landowner must use ordinary care either to warn the licensee of the condition or to make the condition reasonably safe. *Reed,* 258 S.W.3d at 622; *Payne,* 838 S.W.2d at 237. To establish liability for a premise defect, the licensee must prove that the owner actually knew of the condition. *City of Dallas v. Thompson,* 210 S.W.3d 601, 603 (Tex.2006) (per curiam). In determining whether a premises owner has actual knowledge of a dangerous condition, "courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Reed,* 258 S.W.3d at 622; *The Univ. of Tex.-Pan Am. v. Aguilar,* 251 S.W.3d 511, 513 (Tex.2008) (per curiam). Further, "[a]ctual knowledge requires knowledge that the dangerous condition existed at the time of the accident." *Reed,* 258 S.W.3d at 623 (quoting *City of Corsicana v. Stewart,* 249 S.W.3d 412, 414–15 (Tex.2008) (per curiam)); TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a) (Vernon Supp. 2008). "Circumstantial evidence establishes actual knowledge only when it 'either directly or by reasonable inference' supports that conclusion." *Stewart,* 249 S.W.3d at 415; *City of Austin v. Leggett,* 257 S.W.3d 456, 475–76 (Tex.App.-Austin 2008, pet. filed) (holding evidence insuffi-

cient to support inference that City had actual knowledge of dangerous condition). "[T]he Legislature created an actual, not constructive, knowledge standard for waiver of immunity[.]" *Stewart*, 249 S.W.3d at 416.

▮ The City presented uncontroverted evidence that the City did not receive any complaints of dirt or mud on the road prior to the accident. *See Aguilar*, 251 S.W.3d at 513. The city workers' testimony demonstrates they had no knowledge that any dirt or mud was left on the road. *See Stewart*, 249 S.W.3d at 415–16. Turner's affidavit provides no evidence that the City had any awareness of any dirt or mud on the road *at the time of the accident* that created an unreasonable risk of harm. *See Stewart*, 249 S.W.3d at 415; *Reed*, 258 S.W.3d at 623. The Giraldos argue various facts should have led the City to infer that there was a dangerous condition. However, the existence of circumstances creating an inference of constructive knowledge of a dangerous condition does not meet the standard of actual knowledge required by the Legislature. *See Stewart*, 249 S.W.3d at 415–16; *see also Leggett*, 257 S.W.3d at 476. The City presented evidence that it had no actual knowledge of the dangerous condition prior to the accident. The evidence presented by the Giraldos does not directly controvert that evidence and does not support a reasonable inference of actual knowledge on the part of the City. *See Stewart*, 249 S.W.3d at 415. Accordingly, we conclude there is no evidence that the City had actual knowledge that any dirt or mud left on the roadway created an unreasonable risk of harm. *See Reed*, 258 S.W.3d at 623; *Stewart*, 249 S.W.3d at 415. Therefore, the condition cannot give rise to a premise defect claim and the trial court erred in denying the City's plea to the jurisdiction on the premise defect claim.

*See Reed*, 258 S.W.3d at 623. We sustain the City's first issue.

## B. Special Defect

▮ A governmental unit has a duty to warn of special defects such as excavations or obstructions on highways, roads, or streets; or other conditions that present an unexpected and unusual danger to ordinary users of roadways. *Reed*, 258 S.W.3d at 622; *Porter*, 224 S.W.3d at 858–59; TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(b) (Vernon Supp.2008). In regard to a claim for a special defect, the government's duty is the same duty of care that a private landowner owes to an invitee. *Reed*, 258 S.W.3d at 622; *Porter*, 224 S.W.3d at 858. That duty requires the governmental unit to use ordinary care to reduce or eliminate an unreasonable risk of harm, of which the governmental unit knew or reasonably should have known. *Reed*, 258 S.W.3d at 622 (citing *Payne*, 838 S.W.2d at 237); *Porter*, 224 S.W.3d at 858 ("An invitee need only prove the owner knew or should have known of the condition."). Thus, a landowner must warn of a condition even if it has only constructive knowledge of it. *State v. McBride*, 601 S.W.2d 552, 558 (Tex.Civ.App.-Waco 1980, writ ref'd n.r.e.) (citing *County of Harris v. Eaton*, 573 S.W.2d 177 (Tex.1978)).

▮ A special defect is traditionally distinguished by "some unusual quality outside the ordinary course of events." *Reed*, 258 S.W.3d at 622. We are to construe "special defects" to include defects of the same kind or class as the ones expressly mentioned in the statute. *City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex.1997). A condition can be a "special defect" without actually being on the roadway if it is close enough to "pose a threat to the ordinary users of a particular roadway." *Payne*, 838 S.W.2d at 238 n. 3; *Roberts*, 946 S.W.2d at 843. The Texas

Supreme Court has emphasized the "unusual" or "unexpected" character of special defects when it held that ice that had formed on a bridge was not a special defect. *State Dep't of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex.1993) (per curiam). It reasoned that the icy bridge was "neither unexpected nor unusual, but rather entirely predictable" given the circumstances of precipitation with near-freezing temperatures. *Id.* The supreme court further reasoned that "[u]nlike an excavation or obstruction, an icy bridge is something motorists can and should anticipate when the weather is conducive to such a condition." *Id.* Ordinary drivers, in the normal course of driving, should expect slight variations in the road. *Reed*, 258 S.W.3d at 622.

The Texas Supreme Court has held that an "ordinary user" of the road does not include an intoxicated driver traveling without reasonable care and whose deviation from the road is not in the ordinary course of travel. *City of McAllen v. De La Garza*, 898 S.W.2d 809, 810–12 (Tex.1995). In a wrongful death case against a city, the supreme court held that the city owed no duty to the passenger of a car driven by an intoxicated driver when the passenger died in an accident where the intoxicated driver veered off the road and crashed onto city property. *Id.* at 811–12. In support of its conclusion, the supreme court cited with approval a case holding that an erratic and uncontrolled deviation by a drunken and speeding driver is not a normal incident of travel. *Id.* at 811.

In the instant case, the evidence shows that the roadway was a paved road without a shoulder or curb. The photographs reveal a road with no adjacent culvert or ditch, and the presence of dirt immediately at the edge of the pavement. Much like the circumstances in *Reed* and *Kitchen* in which the drivers should have

expected to encounter the conditions which they encountered in the ordinary use of the roadway, an ordinary user of this roadway should expect to encounter some dirt or mud in the ordinary course of driving on such a road. *See Reed*, 258 S.W.3d at 622; *Kitchen*, 867 S.W.2d at 786. The ordinary driver should expect some variation in the condition of the road. *See Reed*, 258 S.W.3d at 622.

The Giraldos presented the affidavit of their witness with a conclusory statement that the mud and dirt he observed on the road more than twenty-four hours after the accident was the reason the driver lost control of the car. However, there is no evidence that the condition presented an unexpected and unusual danger *at the time of the accident* or that it was a condition that an ordinary user of the road would find "unexpected" on this road. *See Kitchen*, 867 S.W.2d at 786. Furthermore, the alleged defects of mud and dirt on the roadway and the bulldozer situated too close to the roadway are not of the same kind or class as the excavations or obstructions the statute contemplates. *See Roberts*, 946 S.W.2d at 843. The photographs demonstrate a minimal amount of mud or dirt on the road, and the bulldozer parked to the side of the roadway, several feet clear of the roadway. We conclude, as a matter of law, that the conditions at the time of the accident did not pose a threat to the ordinary users of the roadway. *See id.; Payne*, 838 S.W.2d at 238 n. 3.

Additionally, the City's duty under the Act is to an ordinary user of the roadway. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(b); *see also De La Garza*, 898 S.W.2d at 810–12. The erratic and uncontrolled deviation by a drunken and speeding driver is not a normal incident of travel. *See De La Garza*, 898 S.W.2d at 811. Officer Fleming determined that the driver's deviation from the roadway was a

result of his intoxication, speeding, and inability to drive in a single lane. He observed no mud or dirt on the road the night of the accident and did not consider mud or dirt on the roadway to be a factor in the accident. We cannot conclude that a passenger in a car driven by an intoxicated driver who was speeding along a curved, unlit road at 1:00 a.m. is an "ordinary user of the roadway" within the meaning of the statute. *See De La Garza,* 898 S.W.2d at 810–12; TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(b).

Accordingly, the trial court erred in denying the City's plea to the jurisdiction on the special defect claim. We sustain the City's second issue.

## IV. CROSS–POINT ON APPEAL

The Giraldos bring a cross-point on appeal asserting the "trial court erred in granting the City of Dallas' plea to the jurisdiction regarding the operation or use of a motorized vehicle as the bulldozer was part of the excavation and the City had an affirmative duty to warn of the excavation using the motorized vehicle and a duty to operate it in a safe and prudent manner." In support of this argument, the Giraldos cite no statutory authority for waiver of the City's immunity on this ground, nor do they cite any authority regarding the City's alleged "affirmative duty." They cite only one case in support of their cross-point. That case is cited for the proposition that "a farm tractor is within the scope of the statute providing that no person shall operate a motor vehicle when he is in an intoxicated condition." *See Slaughter v. Abilene State Sch.,* 561 S.W.2d 789, 791 (Tex.1977).

■ The Texas Rules of Appellate Procedure require an appellant's brief contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.

R.APP. P. 38.1(h). The failure to adequately brief an issue waives that issue on appeal. *See Huey v. Huey,* 200 S.W.3d 851, 854 (Tex.App.-Dallas 2006, no pet.) ("Failure to cite applicable authority or provide substantive analysis waives issue on appeal."); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284–85 (Tex.1994). We conclude the Giraldos have waived their cross-point on appeal.

## V. CONCLUSION

We conclude the trial court erred in denying the City's plea to the jurisdiction in regard to the premise defect and special defect claims. Furthermore, we conclude the Giraldos have waived their complaint regarding the granting the City's plea to the jurisdiction as to the operation or use of a motorized vehicle. We affirm the trial court's order granting the City's plea to the jurisdiction as to the operation or use of a motorized vehicle. We reverse the trial court's order denying the City's plea to the jurisdiction as to the premise defect and special defect claims. We render judgment dismissing the premise defect and special defect claims for lack of subject matter jurisdiction.