OPINION



No. 04-06-00583-CV



TEXAS DEPARTMENT OF TRANSPORTATION,


Appellant



v.



Stephanie GUTIERREZ and Ronnie Gutierrez,


Appellees



From the 79th Judicial District Court, Jim Wells County, Texas


Trial Court No. 04-02-42222


Honorable Richard Clark Terrell, Judge Presiding



Opinion by: Rebecca Simmons, Justice

Dissenting opinion by: Sandee Bryan Marion, Justice


Sitting: Catherine Stone, Justice

 Sandee Bryan Marion, Justice

 Rebecca Simmons, Justice


Delivered and Filed: September 5, 2007


AFFIRMED

 The Texas Department of Transportation ("TxDOT") appeals the district court's denial of
its plea to the jurisdiction and argues that Stephanie and Ronnie Gutierrez's claims should be
dismissed for lack of subject matter jurisdiction. We affirm the trial court's denial because the
excessive gravel constituted a special defect and the jury found TxDOT failed to adequately warn
of this defect. Also, because Ronnie Gutierrez is a "person injured" for purposes of the Texas Tort
Claims Act, the trial court correctly denied the plea to the jurisdiction. Accordingly, we affirm the
trial court.

Background

 Stephanie Gutierrez was injured in a motor vehicle accident, on a curve of FM 624 in Jim
Wells County, at approximately 6:30 a.m. on December 5, 2003. TxDOT was repairing FM 624,
a three day process that involved tearing up the road surface and mixing cement with the milled
pavement before applying the seal coat. To apply the seal coat, the roadway is swept, a layer of hot
asphalt is applied, a layer of aggregate rock (gravel) is placed down, the aggregate is rolled to make
it compact, and finally a second layer of hot asphalt and gravel is applied. Generally, after a layer
of hot asphalt and gravel are applied, TxDOT waits for the seal to set before sweeping the excess
gravel off the road. In this case, the second layer of hot asphalt and gravel was applied on
December 4, 2003, but not swept until the afternoon of December 5th. Prior to the road repair, a
"Curve Ahead" sign with a speed advisory of forty-five miles per hour was in place. Coinciding with
the road repair, TxDOT posted a "Loose Gravel" sign. 

 On the morning in question, Stephanie was driving on FM 624 and her husband Ronnie was
following several minutes behind. After Stephanie lost control of her car on the loose gravel, she
called her husband and pulled off the roadway to inspect her car for damage. Shortly thereafter,
Veronica Maldonado lost control of her car, at the same curve, and struck Stephanie. Maldonado
testified she traveled FM 624 every day, that she noticed the curve and speed advisory signs and as
she approached the curve, slowed her vehicle to approximately forty miles per hour. She further
testified that she neither heard nor felt gravel hit her vehicle before she began to lose control and
never saw Stephanie prior to hitting her. During trial, the Gutierrezes disputed TxDOT's claim of
a Loose Gravel sign posted near the curve. However, after the close of evidence, and before closing
arguments, the Gutierrezes stipulated to the presence of the Loose Gravel sign.

 Following trial on the merits, the jury returned a verdict in favor of Stephanie, finding
TxDOT negligent with respect to the condition of the road. The jury determined TxDOT was not
liable for Ronnie's alleged bystander injury; however, the trial court granted Ronnie's motion for 
new trial. TxDOT's Motion for Judgment Notwithstanding the Verdict or, Alternatively, for a New
Trial, was denied by the trial court. Based on the plaintiffs' stipulation regarding the Loose Gravel
sign, TxDOT filed a post-trial plea to the jurisdiction arguing immunity under the Texas Tort Claims
Act ("TTCA") alleging its duty to warn was discharged as a matter of law by the placement of the
signs. The trial court denied the plea, and this accelerated appeal ensued. 

 TxDOT raises three issues on appeal: (1) the Gutierrezes cannot state an actionable premises-liability claim under the TTCA; (2) Ronnie's bystander claim fails to invoke a waiver of TxDOT's
immunity; and (3) by failing to assert claims within the TTCA's waiver, the Gutierrezes failed to
invoke the district court's subject matter jurisdiction.Standard of Review

 Whether a trial court has subject matter jurisdiction is a question of law. Tex. Dep't of Parks
& Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). We, therefore, review the trial court's
ruling de novo. Id. at 228. In considering jurisdictional pleas, we review the pleadings and evidence
relevant to the jurisdiction issue. Tex. Dep't of Transp. v. Ramirez, 74 S.W.3d 864, 867 (Tex. 2002)
(citing Texas Dep't of Crim. Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001). To the extent there
are fact questions regarding jurisdictional issues, "the fact issue will be resolved by the fact finder." 
Miranda, 133 S.W.3d at 228. In this case, the plea to the jurisdiction was not raised until after all
the evidence was submitted by the parties and the jury returned its verdict. The jury found TxDOT
negligent with respect to the condition of FM 624. (1)Sovereign Immunity

 The TTCA provides that the State waives its sovereign immunity for "personal injury and
death so caused by a condition or use of . . . real property if the governmental unit would, were it a
private person, be liable to the claimant . . ." Tex. Civ. Prac. & Rem. Code Ann § 101.021(2)
(Vernon Supp. 2006). In a premises liability claim, the duty owed by the governmental unit is
dependent on the condition of the property. Tex. Civ. Prac. & Rem. Code Ann. § 101.022 (Vernon
Supp. 2006). If the road condition is an ordinary premise defect, the state owes the same duty a
private landowner owes a licensee. Tex. Civ. Prac. & Rem. Code Ann. § 101.022(c).

 Generally, the duty a landowner owes a licensee is not to injure the licensee through willful,
wanton or grossly negligent conduct. State Dep't of Highways & Pub. Transp. v. Payne, 838 S.W.2d
235, 237 (Tex. 1992). The owner must also warn the licensee of, or make reasonably safe,
dangerous conditions of which the owner is aware and the licensee is not. Id. 


 If, however, the condition is a "special defect," the state owes the same duty that a private
landowner owes an invitee. Id. That duty "requires the landowner to use ordinary care to reduce or
eliminate an unreasonable risk of harm created by a condition of the premises of which the owner
is or reasonably should be aware." Id.; City of Grapevine v. Roberts, 946 S.W.2d 841, 842-43 (Tex.
1997). See also Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b). Under either theory, the plaintiff
must prove the condition created an unreasonable risk of harm. Payne, 838 S.W.2d at 237.

 On appeal, TxDOT contends it did not waive its immunity because: (1) the plaintiffs failed
to establish that the gravel on FM 624 posed an unreasonable risk of harm; (2) regardless of the type
of defect, TxDOT discharged any duty owed to the plaintiffs to protect them from danger by
adequately warning of the gravel; (3) the plaintiffs' argument that different or additional signs should
have been used interferes with TxDOT's discretionary decisions; and (4) any failure to warn on
TxDOT's part was not the proximate cause of Stephanie's injuries. 

Dangerous Condition/Special Defect

 A. Defective Condition

 TxDOT argues the Gutierrezes failed to identify an actionable condition of real property
under section 101.022 of the TTCA because the gravel on FM 624 was not a defective condition
posing an unreasonable risk of harm. (2) Tex. Civ. Prac. & Rem. Code. Ann. § 101.022(b). However,
based on the jury findings and the instructions included within the charge, the jury impliedly found
the gravel posed an unreasonable risk of harm. As discussed below, the evidence was sufficient to
raise a fact issue regarding the defective condition which the jury resolved in favor of the appellees. 
Accordingly, we overrule this issue. 

 B. Special Defect 

 We next review the nature of the defect. Whether the condition constituted a special defect
or an ordinary premises defect determines the duty TxDOT owed to the Gutierrezes. Special defects
are road conditions of the same type and class as excavations or obstructions that "unexpectedly and
physically impair a car's ability to travel on the road." State v. Rodriguez, 985 S.W.2d 83, 85 (Tex.
1999). However, "conditions threatening normal uses of a road may be special defects even though
they do not occur on the surface of a road." Payne, 838 S.W.2d at 238 n.3. They must present an
"unexpected and unusual danger to ordinary users of roadways." Id. at 838 S.W.2d at 238. Special
defects are distinguished by some unusual quality outside the ordinary course of events. Stokes v.
City of San Antonio, 945 S.W.2d 324, 326-27 (Tex. App.--San Antonio 1997, no writ). Whether
a condition is a special defect is a question of law for the court. Rodriguez, 985 S.W.2d at 85;
Payne, 838 S.W.2d at 238.

 At least three other Texas appellate courts have determined that excessive gravel on the road
constituted a special defect. In Texas Dep't of Transp. v. O'Malley, 28 S.W.3d 652 (Tex.
App.--Corpus Christi 2000, pet. denied), TxDOT was conducting road maintenance similar to that
in the present case. During trial there was conflicting testimony regarding whether excessive gravel
remained on the road after the seal coat was placed. The Corpus Christi court upheld the trial court's
judgment finding the excessive gravel constituted a special defect stating, "Like an excavation or
obstruction, a roadway covered with an excessive amount of loose gravel is not something motorists
can reasonably be expected to anticipate." Id. at 656. 


 The case of State v. Wollesen, 93 S.W.3d 910 (Tex. App.--Austin 2002, no pet.), also
involved road repairs similar to the present case. The Austin court compared the excessive amount
of gravel to an unexpected obstruction that is difficult to navigate, and held the trial court properly
found the loose gravel was a special defect. Id. at 913. (3) Likewise, in Tex. Dep't of Transp. v. York,
No. 10-06-00210-CV, 2007 WL 2280391 (Tex. App.--Waco Aug. 8, 2007, no pet. h.), the Waco
court held loose gravel left on a road during repairs constituted a special defect based in part on the
volume and looseness of the gravel and the number of accidents at the site. The case of Montgomery
County Precinct 1 v. Reed, No. 09-06-402 CV, 2006 WL 3823897 (Tex. App.--Beaumont Dec. 28,
2006, no pet.) (mem. op.), is distinguishable from the present case because the appellees failed to
present any evidence regarding the amount of loose gravel, any unusual quality of the gravel, or that
loose gravel was unexpected on a limestone base rural road. The appellate court, therefore, held
appellees failed to establish the gravel constituted a special defect. Id. at *3.

 Although the existence of a special defect is a question of law, the size of the dangerous
condition should be considered in order to determine whether the condition constitutes a special
defect. Harris County v. Eaton, 573 S.W.2d 177, 179 (Tex. 1978). In the present case, several
witnesses testified that the gravel along the curve was "excessive." Testimony established that four
drivers, including Maldonado, lost control of their vehicles while driving on the curve. Ashley Bray,
driving on FM 624 at approximately 4 p.m. on December 4, 2003, testified that she slowed to about
sixty-five miles per hour as she rounded the curve when she lost control of her car. Bray admitted
to having seen the forty-five mile per hour advisory sign and the Loose Gravel sign. Emily
Gonzalez, also driving on FM 624 on at approximately 9:00 p.m. the same day, stated that she was
driving at about sixty to sixty-five miles per hour when she lost control of her car as she went into
the curve. She described the road as not very well-lit, with few lights and testified that she did not
see the Loose Gravel sign. Gonzalez did, however, testify that even if she had seen the sign, she
would not have expected the amount of gravel that was on the road. Bray and Gonzalez both
believed they lost control of their car because of the excessive gravel.

 The investigating officer, DPS Trooper Alonzo Almarez, testified that, in his opinion, four
drivers losing control of their vehicles, in the same spot, was too much of a coincidence. Therefore,
on the afternoon of December 5th, he requested TxDOT sweep the curve of excess gravel. Almarez
considered the amount of loose gravel on the road an obstruction to safe and normal travel and stated
that he slipped on the loose gravel upon getting out of his own vehicle. In his opinion, the four
accidents were caused, at least in part, by excessive gravel on the curve. Noel Ybarra, the TxDOT
roadway maintenance supervisor, also agreed the amount of gravel on the road was excessive. 
Additionally, although the TxDOT crew chief, Jose Garcia, did not agree that the amount of gravel
on the curve was excessive, he did agree that if excessive gravel is present on a road, it creates an
unreasonably dangerous condition for the traveling public.

 TxDOT's expert, Jeffrey Milburn, testified that typically five to ten percent of the gravel laid
down is lost, or would become unstuck from the seal coat. He defined "excessive" as any situation
in which the loss exceeded five to ten percent. The record reveals no witness quantified the word
"excessive" and there is conflicting evidence regarding the size of the area covered with the loose
gravel. Almarez testified the excessive gravel covered an area of about 200 to 250 yards in the area
of the curve. Ybarra insisted the area covered 800 feet, and he explained that Almarez's estimate
of 200 to 250 yards is about the same as 600 to 800 feet. No witness testified as to the depth or
amount of the gravel or otherwise clarified their description of the gravel as being "excessive." 
While TxDOT alleges that the layer of gravel was "no more than one-half inch thick," TxDOT
provides no record reference to support its statement and the record appears to be devoid of any
evidence regarding the thickness of the gravel. See, e.g., Wollesen, 93 S.W.3d at 913-14 (concluding
that loose gravel, one to two inches spread on top of hot, liquid asphalt to seal cracks in the road, was
a special defect); O'Malley, 28 S.W.3d at 656 (concluding that half cubic yard of loose gravel on
stretch of roadway, 200 feet in length and consisting of a curve, was a special defect). (4)

 Here, while no witness quantified the word "excessive" in relation to the depth or amount
of loose gravel on the road, several witnesses testified that there was "excessive" gravel along the
curve where the accident occurred. Additionally, these witnesses, including Almarez, the
investigating officer, attributed the excessive gravel to four other accidents, at the same location,
involving drivers losing control of their cars. We, therefore, conclude that the excessive gravel in
this instance qualifies as a special defect. 

Adequacy of Warning

 Because the loose gravel was a special defect, TxDOT owed Stephanie the higher standard
of care due to invitees, a duty to either make the highway reasonably safe or to adequately warn of
the hazard. Payne, 838 S.W.2d at 237. The jury was instructed and impliedly found that TxDOT
"failed to exercise ordinary care to protect motorists from the danger by both failing to adequately
warn motorists of the condition and failing to make that condition reasonably safe."

 On appeal, TxDOT argues it was not required to make the roadway reasonably safe because
it adequately warned of the condition. Based on the Gutierrezes' admission that TxDOT posted a
Loose Gravel sign and a Curve Ahead sign with a forty-five mile-per-hour speed advisory, TxDOT
asserts its duty to warn was discharged as a matter of law. We disagree.

 A. Discretionary Act

 Although the jury impliedly found the signage inadequate to warn, TxDOT argues that any
question about the adequacy of the warning signs is irrelevant because section 101.056 of the Texas
Practice and Remedies Code creates immunity for its discretionary decisions regarding the type of
warning sign as well as when and how to place warning signs. Tex. Civ. Prac. & Rem. Code Ann.
§ 101.056 (Vernon 2005). (5) There is no dispute in the record that the signs complied with the Texas
Manual on Uniform Traffic Control Devices ("MUTCD") and were of the proper size, color, and
alignment. Although Ybarra agreed the amount of gravel on the road was excessive, he argued that
the MUTCD did not require him to place any additional signage. Because the Loose Gravel sign was
about 500 yards up the road from the Curve Ahead sign, TxDOT concludes it discharged its duty to
warn, which in turn, discharged its duty to exercise reasonable care to protect any licensee or invitee
from danger. In response, the Gutierrezes assert that TxDOT's argument ignores the duty to warn of
special defects required under section 101.060. Tex. Civ. Prac. & Rem. Code Ann. § 101.060. 
Section 101.060 specifically provides that immunity is not waived for a claim arising from the failure
of a governmental unit to place a road sign or the condition of a road sign but it specifically does not
apply "to the duty to warn of special defects." Id. 

 The case of State v. Rodriguez, 985 S.W.2d 83 (Tex. 1999), is dispositive of the issue. In
Rodriguez, the decedent was killed when his tractor-trailer rig hit a bridge abutment along the side
of a detour on U.S. Highway 77 in Corpus Christi. Id. at 85. The detour directed traffic onto a
frontage road to avoid a large excavation on U.S. 77. Id. After following the detour for
approximately one mile, the decedent failed to complete a ninety-degree turn in the detour, driving
onto the detour shoulder and side-swiping the bridge abutment, causing his rig to roll-over. Id. The
court addressed the tension between the immunity for discretionary powers set forth in section
101.056 and the duty to warn of special defects described in sections 101.060(c) and 101.022(b). 
Tex. Civ. Prac. & Rem. Code Ann. §§ 101.022(b), 101.056, and 101.060(c). The court held:

[U]nder section 101.060 the State retained its immunity for warning sign placement
because it also was a discretionary act and because the detour was not a special
defect. 

 . . . . 

However, even if the sign placement decisions were discretionary, the State still
waives immunity if the detour's alleged defects were special defects. Under this
record this detour is neither an "excavation or obstruction," nor a similar condition
presenting an "unexpected and unusual danger to ordinary users of the roadway," and
as such is not a special defect as a matter of law. . . . . 


Id. at 86 (citations omitted, emphasis added). See Harris County v. Estate of Ciccia, 125 S.W.3d
749, 755 (Tex. App.--Houston [1st Dist.] 2004, pet. denied) (Even though road design is initially
discretionary, failure to warn of unlit culvert special defect waived county's immunity under
101.060(b)).


 B. Adequacy of Warning

 The fact that the excessive gravel was a special defect created a duty for TxDOT to
adequately warn the Gutierrezes of the hazardous condition of the road. The evidence at trial
supported a lack of adequate warning despite the placement of the Loose Gravel sign. David Steitle,
the Gutierrezes' expert, opined that the Curve Ahead sign, which had been in place for years, and
the Loose Gravel sign were inadequate warnings. He said the purpose of warning signs is to give
roadway information to drivers unaccustomed to the road and to warn of a specific condition. Steitle
acknowledged that the Curve Ahead sign, with the speed advisory, was adequate because it told the
driver about the specific condition (a curve ahead) and told the driver what to do (slow to forty-five
miles per hour). He concluded, however, that the Loose Gravel sign was inadequate because it failed
to specify the hazard. In his opinion, loose gravel in and of itself is not a hazard, and drivers could
simply interpret the sign as warning against damage to their vehicles and not as a warning that a
hazard existed that would cause them to lose control of their vehicle. Steitle also considered the sign
inadequate because the sign was only posted for one day and the accident occurred at night. Finally,
Steitle testified that TxDOT should have posted a lighted, changeable message board telling drivers
the condition of the road and advising of the action to take. Ybarra, on the other hand, disagreed that
different warning signs were necessary, but conceded that TxDOT could have posted an advisory
or warning sign informing drivers to slow down because of a specific road hazard. Milburn also
conceded TxDOT has the ability to post an advisory speed limit sign for out-of-the-ordinary road
conditions.


Causation

 TxDOT claims the Gutierrezes failed to establish an inadequate warning was the proximate
cause of Stephanie's injuries because she knew about the defect at the time she was injured. 
Stephanie's knowledge of the road condition is relevant only if the defect in this case was a premises
defect rather than a special defect. See County of Cameron v. Brown, 80 S.W.3d 549, 557-58 (Tex.
2002) (in a premises defect case, licensee must prove she did not know of the dangerous condition). 
Because we hold that the condition was a special defect Stephanie's knowledge is irrelevant.

 TxDOT also argues, that even if Stephanie was unaware of the road condition, she became
aware of the condition when she encountered the gravel on the road, voluntarily got out of her car,
and stood by her car to inspect for any damage caused by the loose gravel. According to TxDOT,
Stephanie "had multiple opportunities to leave the allegedly defective premises . . . . [and] she made
an informed decision to remain on the roadway for a minute or two . . . ." Thus, TxDOT concludes,
any failure to warn on its part was not the proximate cause of Stephanie's injuries. The jury heard
the evidence and impliedly found that the negligence of TxDOT proximately caused the occurrence. 
Because there was some evidence to support the jury's finding, we overrule this issue. 

Bystander Claim

 The jury found that Ronnie did not suffer a bystander injury. The trial court, however,
granted his motion for new trial on the bystander issue. On appeal, TxDOT argues the trial court
lacks jurisdiction over Ronnie's claim because the Texas Legislature has not given consent to
bystander suits against a state entity. As its sole support for this argument, TxDOT points to the
TTCA which does not expressly waive immunity for these types of claims. This is an issue of first
impression for our court, and the Texas Supreme Court has not addressed the issue.

 Although the TTCA does not expressly waive immunity for bystander claims, two sister
courts have analyzed whether the TTCA permits a cause of action for bystander injuries. See
Hermann Hosp. v. Martinez, 990 S.W.2d 476 (Tex. App.--Houston [14th Dist.] 1999, pet. denied);
City of Austin v. Davis, 693 S.W.2d 31, 34 (Tex. App.--Austin 1985, writ ref'd n.r.e.). In Hermann
Hospital, a mother and her two children were injured in an automobile accident. Herman Hospital, 
990 S.W.2d at 478. The City argued that the trial court erred in permitting recovery of monetary
damages from the City for bystander injuries on the grounds that section 101.021 of the TTCA does
not waive governmental immunity for bystander claims. Id. The Houston court rejected the City's
argument holding bystander recovery was available under the TTCA. The court relied on City of
Austin, wherein the father of the victim asserted a claim for mental distress and physical injuries
sustained, as a bystander after discovering his son's body at the base of an airshaft. City of Austin,
693 S.W.2d at 34. The Austin court held the father's bystander suit was not derivative of the
statutory wrongful death action of the other wrongful death beneficiaries. Id. His suit was for
injuries he personally suffered and not for damages to which he would have been entitled as a
consequence of his son's wrongful death. Id. Therefore, the court concluded he was a "person
injured" for purposes of the damages cap. Id.; see also Hermann Hosp., 990S.W.2d at479-80. We
agree with this line of cases that a bystander can be considered a "person injured" for purposes of
the TTCA thus resulting in a waiver of TxDOT's sovereign immunity. (6)


Conclusion

 Based on the foregoing, we affirm the trial court's ruling on TxDOT's plea to the jurisdiction
as to the premises claim, as well as, Ronnie's bystander claims.


 Rebecca Simmons, Justice
1. The trial court gave the jury a charge that asked whether TxDOT's or Stephanie's or Veronica's
negligence was a proximate cause of the occurrence. Along with the question the court gave the jury the following
instruction :

 

 With respect to the condition of FM 624, Texas Department of Transportation was negligent if:

 A. The condition posed an unreasonable threat of harm; and

 B. Texas Department of Transportation knew or reasonably should have known of the danger; and

 C. Texas Department of Transportation failed to exercise ordinary care to protect motorists from the
danger by both failing to adequately warn motorists of the condition and failing to make that
condition reasonably safe. 
2. In order to find TxDOT negligent, the jury instruction required a finding that the condition posed an
unreasonable risk of harm.
3. The court noted, however, the State did not challenge the special defect characterization on appeal. Id. at
913-94. 
4. See also, e.g., Harris County, 573 S.W.2d at 178-80 (concluding that an oval-shaped hole, six to ten
inches deep, extending across ninety percent of roadway, which caused car traveling at thirty-five miles per hour to
flip over, was a special defect); Morse v. State, 905 S.W.2d 470, 475 (Tex. App.--Beaumont 1995, writ denied)
(substantial evidence presented on depth and length of drop-off and that drop-off prevented tires from re-entering
roadway); State v. McBride, 601 S.W.2d 552, 558 (Tex. Civ. App.--Waco 1980, writ ref'd n.r.e.) (holding that a
slick, muddy excavation of the highway so severe a car traveling at less than thirty-five miles per hour went out of
control was a special defect).
5. "This chapter does not apply to a claim based on: (1) the failure of a governmental unit to perform an act
that the unit is not required by law to perform; or (2) a governmental unit's decision not to perform an act or on its
failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or
nonperformance of the act to the discretion of the governmental unit." Tex. Civ. Prac. & Rem. Code Ann. §
101.056.
6. We note that the only issue before us is whether the trial court has jurisdiction to hear Ronnie's bystander
claim, we do not address the merits of such a claim.